F. Thomas Hovore (SBN 196851)
HOVORE LAW
402 West Broadway
Suite 400
San Diego, California 92101
Phone: (800) 418-1337
Fax: (818) 369-6880
Email: tom@hovore.com
*Attorney for Plaintiffs*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/22/2022** at 03:00:00 PM
Clerk of the Superior Court
By Mariejo Guyot, Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| DENNY BHAKTA, an individual; FUSION HOTEL MANAGEMENT LLC, a California limited liability company; and FUSION HOSPITALITY CORPORATION, a California corporation<br><br>Plaintiffs,<br><br>vs.<br><br>HAIGHT BROWN & BONESTEEL, LLP, a California limited liability partnership; POKALA LAW, APC, a California professional corporation; and KALYAN D. POKALA, an individual<br>Defendants. | Case No.: 37-2022-00051256-CU-PN-CTL<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(1) PROFESSIONAL NEGLIGENCE;**<br><br>**(2) BREACH OF FIDUCIARY DUTY;**<br><br>**(3) BREACH OF CONTRACT; AND**<br><br>**(4) UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs DENNY BHAKTA, FUSION HOTEL MANAGEMENT LLC, and FUSION HOSPITALITY CORPORATION, (collectively referred to as the "Plaintiffs") for their complaint, alleges as follows:

## THE PARTIES

1.     Plaintiff DENNY BHAKTA is, and at all times stated in the Complaint was, an individual over the age of 18 and residing in San Diego County, California.

2.     Plaintiff FUSION HOTEL MANAGEMENT LLC is, and at all times stated in the Complaint was, a California limited liability company incorporated under the laws of the State of California, and authorized to do business in California, with its principal place of business in San Diego, California.

3.      Plaintiff FUSION HOTEL HOSPITALITY CORPORATION is, and at all times stated in the Complaint was, a California corporation incorporated under the laws of the State of California, and authorized to do business in California, with its principal place of business in San Diego, California.

4.      Defendant HAIGHT BROWN & BONESTEEL, LLP is, and at all times stated in the Complaint was, a California limited liability partnership incorporated under the laws of the State of California, and authorized to do business in California, with an office in San Diego, California.

5.      Defendant POKALA LAW, APC, is, and at all times stated in the Complaint was, a California professional corporation incorporated under the laws of the State of California, and authorized to do business in California, with its principal place of business in San Diego, California.

6.      Defendant KALYAN D. POKALA is, and at all times stated in the Complaint was, an individual over the age of 18 and residing in San Diego County, California.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over all causes of action asserted herein as all causes of action arise out of conduct undertaken by Defendants in San Diego County and pursuant to California Code of Civil Procedure § 410.10.  Defendants have sufficient minimum contacts with the State of California so as to render the exercise of jurisdiction over it by the State of California courts consistent with traditional notions of fair play and substantial justice.

8.      Venue is proper in this Court pursuant California Code of Civil Procedure § 395(a) because the injury occurred and continues to occur in San Diego County and because Defendants' obligations were to be performed in San Diego County.

## FACTUAL ALLEGATIONS

9.      In 2017, Denny Bhakta ("BHAKTA") entered into a joint venture with his uncle, Andrew Patel ("A. Patel"), which included A. Patel's existing partners Mukesh Patel ("M. Patel") and Vishal Patel ("V. Patel").  M. Patel and V. Patel are not related to Plaintiff or A. Patel.

10.      The purpose of the joint venture was to engage in hospitality convention and group sales.

11.      Prior to engaging in the joint venture, M. Patel represented to BHAKTA that he owns thirty (30) Marriott Hotels.  V. Patel represented to BHAKTA that he is related to billionaire Sanj Patel.

2

COMPLAINT

**Pokala Matter**

12.     BHAKTA retained corporate counsel, Kaylan Pokala ("POKALA") and his firm Pokala Law, APC, ("POKALA FIRM") to represent him in his dealings with the Patels; namely, to protect his interests in the transactions, draft a stock purchase agreement and to advise BHAKTA on applicable SEC regulations, exemptions, and accreditations.

13.     Fusion Hospitality Corporation ("FUSION CORP") was formed by POKALA FIRM to facilitate the joint venture with the Patels.

14.     It was understood by the Plaintiffs that POKALA would advise them as to whether or not the corporation needed to register its dealings with the SEC and/or determine whether there were any exemptions.

15.     It was also understood by the Plaintiffs that POKALA was tasked with the responsibility of reviewing, evaluating and advising BHAKTA regarding what began to be referred to as the "Stock Purchase Agreement" by BHAKTA and FUSION CORP on the one hand the Patels and their entities on the other hand.

16.     It was also understood by the Plaintiffs that POKALA had the duty to ensure that the Stock Purchase Agreement contained adequate protections for BHAKTA and FUSION CORP in the event that the Patels made any misrepresentations about their accreditations for making the contemplated investment.

17.     POKALA proceeded to form FUSION CORP register it with the California Secretary of State, and advise BHAKTA with respect to potential SEC registration obligations.  Specifically, POKALA advised BHAKTA that while the parties were referring to the agreement as relating to stock, that they should structure it as a "Limited Partnership" and later as a "stock corporation" so as to avoid "SEC problems."  BHAKTA and FUSION CORP relied on POKALA'S advice and purported expertise in the field.

18.     POKALA advised BHAKTA, and included in the Stock Purchase Agreement, that the transaction is a "securities transaction, and is an exempt transaction under Rule 506(b), a 'safe harbor' under Section 4(a)(2) of the Securities Act."  Therefore, and based on POKALA'S advice, the Stock Purchase Agreement and resulting investment were not registered with the SEC.

COMPLAINT

19.    Upon information and belief, POKALA made a series of errors in drafting the Stock Purchase Agreement, including but not limited to:

    a.   Failing to require that the Patels invest in their own names and use their own monetary funds;

    b.   Failing to require that investment funds not be leveraged or funded from any source not belonging to the Patels;

    c.   Failing to advise whether the sale implicated SEC registration obligations and therefore requiring the Patels to prove that they were "Accredited Investors" as the term is defined in the 1933 Securities Act;

    d.   Failing to include that the Patels warranted they were sophisticated in business financial and investment matters to evaluate the merits and risks of the investment;

    e.   Failing to include that the Patels warranted that the information they had provided regarding their financial position was correct and complete;

    f.   Failing to include that if the Patels had any material change in their financial position, they were to immediately update BHAKTA and FUSION CORP.

    g.   Failing to include that the Patels had relied on their own taxing, legal, and other advisors in evaluating whether to enter into the agreement;

    h.   Failing to include that the Patels had determined, after a full analysis of the investment and their own financial resources, that the investment was suitable for them and that they could sustain the loss of the investment, should that occur;

    i.   Failing to include that the Patels were satisfied with their investigation into the investment and that they did not believe there was anything further they needed to review prior to funding;

    j.   Failing to include that the Patels acknowledged there will be no public market for the sale of the investment, and that they therefore could not liquidate the investment in the event of an emergency;

    k.   Failing to require the Patels to certify that the investment would not cause them undue financial burden and that the investment was not disproportionate to their net

4

worth;

    l.   Failing to include a provision that if BHAKTA and/or FUSION CORP learned that the Patels had made a misrepresentation when entering into the agreement regarding their financial wherewithal, BHAKTA and/or FUSION CORP would have the right to terminate the agreement, apply penalties, and return all monies received for shares not issued; and

    m.   Failing to require the Patels to defend and indemnify BHAKTA and/or FUSION CORP for any SEC investigation or suit arising out of the Patels making misrepresentations with respect to their accreditations.

20.    Upon information and belief, a competent attorney would have referred BHAKTA to an attorney specializing in SEC registration and exemption requirements.  POKALA made no such referral, and further provided incorrect advice regarding FUSION CORP'S exemption.  POKALA advised that FUSION CORP qualified for a Section 4(2) exemption.  However, upon information and belief, a competent SEC attorney would have advised that in addition to claiming a 4(2) exemption, a business in the place of FUSION CORP should also claim a Regulation D exemption so that in the event the 4(2) exemption claim failed, Regulation D could be cited as a back-up.  Further, and in any event, POKALA completely failed to register anything with the SEC and instead incorrectly advised BHAKTA and FUSION CORP that no sort of filings, including for exemptions, were required.

21.    POKALA billed, excessively, at an hourly rate ranging from $300-$350/hour and frequently failed to provide work product supporting the work his bills stated was done.

22.    A. Patel, V. Patel, and M. Patel thereafter made financial contributions to the joint venture and, with the legal assistance of POKALA, BHAKTA issued stock certificates to them.

23.    A few months after making financial contributions, M. Patel withdrew $379,000 from the joint venture stating that it was for "estimated taxes."

24.    Two weeks later, M. Patel requested withdrawal of $1.5 million in funds he had invested in the venture, and shortly thereafter, V. Patel requested the same.

25.    POKOLA, on behalf of BHAKTA, and counsel for the three Patels thereafter engaged in various arguments regarding the state of the joint venture.

26.   Had POKALA included the above-mentioned clauses designed to protect BHAKTA and FUSION CORP, the Patels either would not have made the investment in the first place, or BHAKTA and FUSION CORP would have had a contractual basis for returning their investment and cancelling the agreement.

27.   Instead, the Patels brought suit against BHAKTA and FUSION CORP in 2019 after BHAKTA refused to turn over the requested funds based on POKALA'S advice.

28.   During the course of the litigation, BHAKTA discovered that A. Patel, V. Patel, and M. Patel had been operating as unregistered brokers and that a very small amount of capital that was contributed consisted of their actual funds.  Instead, the money that they had contributed was borrowed, and further, the investor credentials that they had provided to BHAKTA were fraudulent.

29.   Again, had the above-referenced clauses been included in the stock purchase agreement, BHAKTA and FUSION CORP would have had complete defenses to the lawsuit and easy mechanisms for cancelling the partnership.

**Case One**

30.   The initial case the Patels filed was captioned *Mukesh Patel, et al. v. Fusion Hospitality Corporation, et al.*, San Diego Superior Court Case No. 37-2019-00006221-CU-BC-CTL ("Case One").  The Patels alleged that BHAKTA and FUSION CORP failed to deliver cash due under the stock purchase agreement, and further failed to deliver shares as required following their performance.

31.   POKALA had advised BHAKTA not to meet the Patels demands or issue the stock requested due to the Patels' fraudulent representations regarding their accreditations.

32.   In Case One, POKALA did not advise BHAKTA and FUSION CORP to file a cross-complaint for fraud against the Patels and their companies, even after learning that they had made false and fraudulent claims on their purported proof of accreditation.  POKALA only advised BHAKTA and FUSION CORP to file suit for breach of a non-disclosure provision of the stock purchase agreement.

33.   Further, though the Patels and their companies operated outside the state of California, POKALA did not advise BHAKTA and FUSION CORP to file a motion for undertaking, which, on information and belief, would have ended the Patels' lawsuit as they were not in possession of the funds necessary to post the undertaking that would have been ordered.

34.     The parties to Case One engaged in a mediation in July of 2019.  The Parties entered into a mostly handwritten settlement agreement, which POKALA advised BHAKTA to enter into (hereinafter the "Settlement Agreement").

35.     The Settlement Agreement provided that the existing promissory notes from FUSION CORP to Patel would be surrendered in exchange for a new note in the amount of $5,012,400.96 with interest at 10% APR from the date of execution but no later than August 19, 2019.  The note was to be paid in certain specified installments, and if an installment was not made, FUSION CORP was to issue specified bonus shares.

36.     The Patels were required to corroborate their funds (i.e. provide proof that the funds were not from third parties and, further, that failure to comply with required disclosures could result in an unwinding of the Settlement Agreement).

37.     The Settlement Agreement was enforceable pursuant to Code of Civil Procedure section 664.6.

38.     The Settlement Agreement stated that POKALA was to draft a long-form agreement, but he never did so.

39.     POKALA advised BHAKTA to enter into the Settlement Agreement despite the fact that it permitted for usury interest and failed to protect BHAKTA and FUSION CORP in the event that the Patels did not make the required financial disclosures verifying the funds.  Further, the Settlement Agreement did not distinguish the payment allocations to principal or interest, which would significantly impact tax consequences.

40.     Based on POKALA'S advice that the settlement was not effectuated due to remaining ambiguities, FUSION CORP did not make the first payment.  POKALA went so far as to tell BHAKTA not to fund the Settlement Agreement because he suspected the Patels could be funding terrorism.

41.     Thereafter, the Patels moved to enforce the Settlement Agreement.  The trial court rejected POKALA'S arguments and ordered BHAKTA and FUSION CORP to pay the Patels the sum of $5,012,400.96, plus interest at "10% per annum" from August 19, 2019 (the "First Judgment").

42.     Pokala failed to preserve the argument for appeal that the judgment should not be entered because it: i) contained a usury interest provision; and ii) the Patels had not performed their

obligation to verify their investment funds, which should be a prerequisite to payment.

43.     Further, the First Judgment named BHAKTA personally even though the terms of the Settlement Agreement stated he was released from any obligation. POKALA never objected to the terms of the proposed First Judgment after the Patels' counsel filed it.  The Court entered the First Judgment, as drafted by the Patels' counsel, on March 5, 2020.

**Involvement Of Haight, Brown & Bonesteel, LLP**

44.     POKALA recommended that BHAKTA and FUSION CORP appeal the First Judgment and hire Haight, Brown & Bonesteel, LLP to work on the appeal.  BHAKTA AND FUSION CORP retained Haight, Brown & Bonesteel, LLP ("HAIGHT").  HAIGHT attorneys Arezoo Jamshidi and Catherine Asuncion filed the appeal on August 12, 2021.

45.     POKALA asserted himself as FUSION CORP'S corporate counsel and reviewed everything that HAIGHT'S office prepared, resulting in significant duplicative legal fees.

46.     While the appeal was pending, POKALA wrongfully advised BHAKTA and FUSION CORP to file a motion for reconsideration.  It was denied because the Notice of Appeal divested the trial court of jurisdiction, resulting in the further unnecessary expenditure of legal fees.

47.     The Court of Appeal reversed the First Judgment, finding that it omitted material terms from the Settlement Agreement and misstated other terms.  Specifically, the Court of Appeal stated that the First Judgment only included FUSION CORP'S performance obligations and omitted the Patels' obligations.  Remittitur issued directing the trial court to enter judgment consistent with the Settlement Agreement.

48.     While HAIGHT had previously advised BHAKTA and FUSION CORP that the costs of posting the bond for the appeal (estimated at $300,000) would be recoverable against the Patels, neither POKALA nor HAIGHT moved to have those costs awarded to Fusion Corp.  HAIGHT advised BHAKTA and FUSION CORP that they would be entitled to "lost opportunity" damages relating to funds encumbered for the bond needed to fund the appeal, yet neither HAIGHT nor POKALA moved for those costs even after the appeal was successful.

49.     POKALA and HAIGHT billed BHAKTA and FUSION CORP for strategizing regarding the amended judgment.  However, neither firm followed through with creating a judgment

modeling the terms of the Settlement Agreement.  HAIGHT advised BHAKTA that the Patels wanted changes to the judgment that were unacceptable, but in the end, failed to object when the Patels submitted their proposed judgment.

50.     HAIGHT filed a Notice of Disassociation of Counsel on December 23, 2021.

51.     POKALA filed a motion to be relieved as counsel on January 6, 2022, which was later granted on February 17, 2022.

52.     In the interim, the Patels filed an amended judgment which POKALA did not object to despite the fact that it was nearly identical to the First Judgment.  At a hearing on February 1, 2022, POKALA reported that the Court asked the parties for the status of a long-form agreement, which POKALA advised the parties did not have.  POKALA told BHAKTA that the Court could not enter a monetary judgment based on the Court of Appeal's ruling, which was untrue.

53.     Due to HAIGHT and POKALA'S failure to negotiate a new judgment or object to the one filed, the Court entered the judgment drafted by the Patels' counsel, and which did not implement the Court of Appeal's remittitur instructions, and Notice of Entry of Judgment was served on March 2, 2022 (the "Second Judgment").

54.     In what BHAKTA believes to be an attempt to gain leverage in the litigation, on information and belief, one or all of the Patels reported him to the SEC.   Ultimately, the SEC filed a civil action against BHAKTA and the Department of Justice filed criminal charges.

**Case Two**

55.     The Patels filed a second suit against BHAKTA and FUSION CORP on October 31, 2019 alleging breach of contract based on the Settlement Agreement and original stock purchase agreement, *V&C Investments, LLC, et al. v. Fusion Hospitality Corporation, et al.*, San Diego Superior Court Case No. 37-2019-00057744-CU-BC-CTL ("Case Two").  POKOLA and HAIGHT appeared as attorneys of record for BHAKTA and FUSION CORP.

56.     This time, POKALA did advise BHAKTA and FUSION CORP to file a Cross-Complaint for fraud based on the Patels' misrepresentations regarding their investment.  However, neither POKALA nor HAIGHT challenged the Patels' duplicative claims regarding breach of the stock purchase agreement on *res judicata* or collateral estoppel grounds.

57.     As the Patels reside in Texas and Oklahoma, POKALA advised BHAKTA that he needed to retain out-of-state counsel to domesticate subpoenas for depositions.  BHAKTA paid Texas counsel approximately $30,000 to file an ancillary proceeding.  POKALA later told BHAKTA that the Texas counsel had not properly domesticated the subpoenas and he needed to retain another out-of-state attorney who billed $70,000 to perform the same work.  HAIGHT, although attorneys of record, made no effort to protect the interests of BHAKTA.

58.     At all times, POKALA held himself out as FUSION CORP'S "corporate counsel" and billed for the oversight on this out-of-state work, and further advised BHAKTA that the out-of-state legal bills were reasonable for the services provided.  Upon information and belief, these services were completely unnecessary as BHAKTA has since learned that both Texas and Oklahoma are parties to the Uniform Deposition Act and POKALA could have handled the majority of this work himself rather than have BHAKTA incur this significant cost.  Again, HAIGHT, although attorneys of record, made no effort to protect the interests of BHAKTA.

59.     In the summer of 2021, POKALA flew to Texas and took four depositions.  He failed to take other depositions needed during that trip to save BHAKTA costs and fees.  He further had an associate attend with him and billed BHAKTA for the associate's time as well.  Critically, while in Texas, POKALA failed to take the deposition of Verify Investor, a company that the Patels used to obtained their fraudulent investor credentials. POKALA failed to take this very important deposition despite the fact that BHAKTA had paid Texas counsel to serve Verify Investor with a subpoena. HAIGHT, although attorneys of record, made no effort to protect the interests of BHAKTA.

60.     When BHAKTA directed POKALA to serve the subpoena again, the Patels filed a motion to quash the subpoena.  POKALA filed a late opposition and moved to withdraw from the case. Both were set for hearing on February 18, 2022.  The motion to quash was granted due to POKALA'S untimely opposition and BHAKTA has hence lost this critical deposition for use in Case Two in support of his Cross-Complaint.  The Court relieved POKALA as counsel on February 24, 2022.

61.     On April 1, 2022, BHAKTA and FUSION CORP'S motion for the Patels to post an undertaking (which POKALA and HAIGHT drafted and filed prior to withdrawal) was heard.  The Court denied the motion, stating that BHAKTA and FUSION CORP had not met their burden of

proving a probability of prevailing on the merits of the Cross-Complaint.  On information and belief, the Court would have granted the motion had POKALA and HAIGHT submitted as an exhibit the expert report of BHAKTA'S forensic accountant, which concluded that the Patels had falsely reported to BHAKTA their accreditation and inflated their worth as nine times the actual amount.

### Shustak Matter – Failed Oversight by Pokala

62.     In the summer of 2021, the SEC began an investigation into BHAKTA and his companies.

63.     BHAKTA, based upon the referral from POKALA and HAIGHT, retained Erwin J. Shustak ("SHUSTAK") of the firm SHUSTAK REYNOLDS & PARTNERS, PC, ("SHUSTAK FIRM") on July 30, 2021, to represent BHAKTA individually, along with Fusion Hotel Management, LLC, and Fusion Hospitality Corporation "in responding to subpoenas and/or an inquiry by the Securities Exchange Commission (SEC), and representing [BHAKTA] in on-the-record testimony requested by the SEC."

64.     On its webpage, the SHUSTAK FIRM advertises that it has expertise in:

    a.   Securities Litigation & Arbitration;

    b.   Representation of Broker-Dealers, Registered Persons & Investment Advisers;

    c.   SEC & FINRA Investigations/Enforcement Actions;

    d.   Complex Business Disputes;

    e.   Corporate & Securities Transactions.

65.     In particular on his website, SHUSTAK advertises that his area of practice include:

    a.   Complex securities, financial, and business disputes, litigations, and arbitrations throughout the country in a wide range of State and Federal Courts; and arbitration forums including AAA, JAMS, FINRA, International Chamber of Commerce and others.

    b.   FINRA Arbitrations and counseling for RIA firms, broker-dealers, registered persons, and public customers throughout the country.

    c.   Financial services and regulatory law.

    d.   Securities, financial, and real estate fraud disputes.

11

COMPLAINT

e.  Unfair competition disputes involving trade secrets, intellectual property, copyrights, and trademarks.

f.  Business, contract, and real estate disputes.

g.  SEC, FINRA and regulatory investigations and enforcement proceedings.

h.  Corporate, LLC, and partnership control and breach of fiduciary duty disputes.

i.  Strategic legal advice and counseling based on 45 years' of experience.

66.  POKALA and SHUSTAK communicated to BHAKTA that they would work together and jointly provide services for BHAKTA and FUSION CORP.  It was always understood by BHAKTA that POKALA and SHUSTAK would work together to appease the SEC.

67.  It was always understood by BHAKTA that POKALA would bring SHUSTAK up to speed on the disputes with the Patels and that POKALA would provide the documentation SHUSTAK needed to defense the SEC investigation.

68.  SHUSTAK FIRM, on behalf of BHAKTA, negotiated with the SEC and subsequently agreed to provide a rolling production of documents in response to the subpoenas, and to produce BHAKTA for testimony.

69.  SHUSTAK FIRM received the documents from POKOLA and was tasked with the duty to review the documents and decide which should be produced to the SEC and which should not be produced.

70.  Upon information and belief, SHUSTAK FIRM failed to competently review the documents produced by BHAKTA prior to production to the SEC and instead provided several irrelevant and duplicative documents.

71.  The duplicate documents included blank stock certificates, labeled with different identifying Bates numbering, which, upon information and belief, made it appear to the SEC that BHAKTA had issued numerous blank certificates.

72.  Specifically, there were at least ten (10) instances in which the SHUSTAK FIRM produced multiple copies of the same blank stock certificates with different Bates numbers due to the careless and incompetent review of the documents.

73.  Upon information and belief, the SHUSTAK FIRM'S careless and incompetent

COMPLAINT

production of multiple copies of the same single blank certificate with several different Bates numbers gave the SEC the false impression that BHAKTA was issuing stock in an improper manner.

74. SHUSTAK FIRM also negligently and carelessly produced, without explanation, documents belonging to A. Patel and his company which were not responsive the SEC's inquiry of BHAKTA.

75. In addition, SHUSTAK FIRM negligently and carelessly produced multiple drafts of documents, not just final, executed copies.

76. SHUSTAK FIRM represented BHAKTA during his testimony with the SEC.

77. Prior to the deposition, there was no preparation as to what SHUSTAK FIRM anticipated what the SEC would ask BHAKTA or what they were seeking. SHUSTAK FIRM did not provide any guidance as to how to answer the questioning or how to prepare for the questioning. SHUSTAK FIRM did not conduct an in-person mock deposition or prepare BHAKTA in any way.

78. Instead, the SHUSTAK FIRM simply called BHAKTA to "prep" him, but never instructed BHAKTA as to anything specifically, including the subpoenas and what the SEC was trying to accomplish during the interview.

79. BHAKTA was given no strategy and was not instructed to review or study any of the documents at issue in the matter prior to the deposition. To the contrary, BHAKTA was informed by SHUSTAK FIRM that he could not have any notes or records in front of him, but was not instructed as to which records he should review prior to the deposition.

80. In fact, BHAKTA was instructed to just "rely" on his memory and that it would not work against him. BHAKTA took this to understand that the SEC questioning would not be very intrusive.

81. However, prior to the deposition, the only information that was provided to BHAKTA by the SHUSTAK FIRM was that SHUSTAK incorrectly advised BHAKTA that neither he nor his corporation could invoke the Fifth Amendment right against self-incrimination in response to questions.

82. This was blatantly incorrect. BHAKTA, individually, absolutely had a right to invoke his Fifth Amendment right and indeed, should have been advised to do so when questioned about the

blank stock certificates and other documents that the SEC was misinterpreting.   Any competent attorney in that particular field should know of BHAKTA'S rights regarding the Fifth Amendment.

83.     During the SEC's deposition of BHAKTA, the SHUSTAK FIRM and SHUSTAK, personally, gave little to no advice to BHAKTA as to how to conduct himself during the deposition.

84.     Upon information and belief, SHUSTAK FIRM and SHUSTAK, personally, were caught off-guard by the SEC's questioning and did not know how to prepare BHAKTA going forward.

85.     As a result of SHUSTAK FIRM'S mishandling of the document production and negligent defense of BHAKTA by SHUSTAK, personally during his testimony, the SEC filed a civil action against all three Cross-Complainants on December 14, 2021.

86.     As a result of SHUSTAK'S failure to provide competent advice to BHAKTA regarding his Fifth Amendment right, the Department of Justice filed criminal charges against BHAKTA for securities violations.

87.     Had BHAKTA been advised to invoke his Fifth Amendment right by SHUSTAK FIRM, he would not have been criminally charged.

88.     In addition, SHUSTAK FIRM failed to properly identify and communicate to the SEC, the exemption status of BHAKTA'S companies and allowed the company to be classified as an "unregistered security."

89.     As a direct result of SHUSTAK FIRM'S negligent and careless review of the documents prior to production to the SEC, in the complaint filed by the SEC to BHAKTA, he is charged with "common stock" being issued as unregistered securities – the blank certificates mislabeled and produced by the SHUSTAK FIRM.

90.     The complaint by the SEC against BHAKTA was filed on December 14, 2021.

91.     SHUSTAK informed BHAKTA that he was "blind-sided" by the complaint and was not sure he could handle the defense.

92.     On January 11, 2022, SHUSTAK informed BHAKTA the he believed someone "tipped" the SEC off regarding BHAKTA.

93.     That same day, SHUSTAK FIRM terminated its representation of BHAKTA and his companies and informed him that he owed $41,713.44 in unpaid legal fees and costs.

94.    Upon information and belief, the SHUSTAK FIRM negligently and falsely billed BHAKTA for services not provided, including double and triple billing for the same services.

95.    In addition, upon information and belief, the SHUSTAK FIRM intentionally over-staffed services for BHATKA to inflate the billings issued to BHAKTA.

96.    Finally, upon information and belief, SHUSTAK FIRM billed for services that the firm negligently and carelessly performed denying BHAKTA the value for the invoices issued.

97.    As a result of SHUSTAK FIRM and SHUSTAK'S negligent legal advice, Cross-Complainants have suffered significant damage, including subsequent attorney's fees and costs in his defense against the SEC charges, which would not have occurred had BHAKTA received proper legal representation.

98.    In addition, as a result of SHUSTAK FIRM and SHUSTAK'S negligent legal advice, BHATKA has essentially lost all ability to conduct business and has been decimated and destroyed by the SEC's actions.

99.    POKOLA, who at all times represented that he and his Firm were working with the SHUSTAK FIRM and was the corporate counsel for FUSION CORP, failed to oversee the representation and failed to protect the interests of its clients from the malpractice conducted by the SHUSTAK FIRM.

100.    BHAKTA has suffered in excess of $3,000,000 in damages as a direct result of Defendants' negligent legal services.

**CAUSES OF ACTION**
**COUNT I**
**(Legal Malpractice – Professional Negligence)**

101.    All the foregoing allegations are repeated as if set forth again in full.

102. At all times relevant hereto, by virtue of the attorney-client relationship between the Defendants and the Plaintiffs, the Defendants had a duty to provide the Plaintiffs with the competence, care and skill required and reasonably expected of a law firm and an attorney who held themselves out as experienced and knowledgeable in such matters.

103. By their acts and omissions alleged herein, the Defendants breached their duty to the Plaintiffs by failing to perform such services equivalent to a competent and prudent attorney in the

community and with a manner and with the care and skill required and reasonably expected.

104. As a proximate result of the Defendants' incompetence and breaches of their duty of care and skill, Plaintiffs have suffered damages in an amount to be proven at trial but in excess of the minimum required by this Court's jurisdiction, but no less than $3,000,000.

## COUNT II
### (Breach of Fiduciary Duty)

105. All the foregoing allegations are repeated as if set forth again in full.

106. At all times relevant hereto, by virtue of the attorney-client relationship between the Defendants and the Plaintiffs, the owed the Plaintiffs fiduciary duties of utmost loyalty.

107. By their acts and omissions alleged herein, Defendants breached their fiduciary duty of loyalty to the Plaintiffs.

108. As a proximate result of the Defendants' breaches of their fiduciary duties, Plaintiffs have suffered damages in an amount to be proven at trial but in excess of $3,000,000.

## COUNT III
### (BREACH OF CONTRACT)

109. All the foregoing allegations are repeated as if set forth again in full.

110. This cause of action is pleaded in the alternative.

111. BHAKTA and FUSION CORP entered into various written Agreements with Defendants, whereby Defendants agreed to provide Plaintiffs with the legal services described above.

112. Defendants failed to provide competent legal services and failed to comply with the terms of the written contract between the parties, including a failure to arbitrate the instant matter

113. Further, Defendants violated the terms of the contract by failing to properly bill for the services it claimed it provided.

114. As a result of Defendants's breaches of the written contract, Plaintiffs are entitled to recover compensatory damages in the amount of approximately $3,000,000.00, plus interest thereon at the maximum rate allowed by law, in addition to consequential damages in amounts to be determined at trial.

## COUNT IV
### (UNJUST ENRICHMENT)

115. All the foregoing allegations are repeated as if set forth again in full.

COMPLAINT

116. This cause of action is pleaded in the alternative.

117. Defendants received payment for attorneys' fees and billed for improper, negligent legal services.   In addition, upon information and belief, the services for which Defendants billed were double and triple billed and excessively billed for the services provided.

118. Defendants received economic benefit therefrom and wrongfully deprived Plaintiffs from its use thereof.

119. As a result of Defendant's wrongful acts, they have been unjustly enriched to Plaintiffs' detriment, impoverishment and economic loss for which they are entitled to recover compensatory damages plus interest thereon at the maximum rate allowed by law, in addition to consequential damages in amounts to be determined at trial.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.  Compensatory, consequential and incidental damages in amounts under all Counts to be determined at trial, but not less than $3,000,000, jointly and severally;

B.  Disgorgement of all fees paid and cancellation of all fees that are alleged to be due by the POKALA FIRM and HAIGHT comprised of approximately $1,500,000;

C.  Pre- and Post-judgment interest, as applicable; and

D.  For any other and further relief as the Court deems just.

Dated:  December 22, 2022

HOVORE LAW

By _____

Thomas Hovore

COMPLAINT