JOHN D. KIRBY
CA Bar No. 149496
The Law Office of John D. Kirby
401 West A Street, Suite 1150
San Diego, CA 92101
Tel (619)557-0100
jkirby@johnkirbylaw.com

LAURA F. MARRAN
CA Bar. No. 200374
NY Bar. 2310983
Columbia Place, 401 West A. Street
San Diego, CA 92101
Tel (858) 699-0375
lauramarranattorney@gmail.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
## (HONORABLE JANIS L. SAMMARTINO)

| UNITED STATES GOVERNMENT, | Case No: 2:21-cr-03352-JLS-1 |
|---|---|
| Plaintiff, | **MOTIONS IN LIMINE** |
| vs. | 1. **Motion to Exclude All W-2, 940 and 941 Forms.** |
| DENNY BHAKTA | 2. **Motion to Exclude Use of Evidence in Prosecutor's Opening Statement.** |
| Defendant | 3. **Motion to Exclude Mr. Bhakta's Proffer Statement.** |
| | 4. **Motion to Exclude Avanindrakumar Patel's Original SEC Report.** |
| | 5. **Motion to Exclude Partial Subscription Agreements.** |
| | 6. **Motion to Exclude All ARMPVC Created Documents.** |
| | 7. **Motion for Judicial Notice of Language Contained in** |

| | |
|---|---|
| | Kabbage Settlements.<br>8. **Motion to Exclude Witnesses Not Listed by the Government in Its Trial Brief.**<br>9. **Motion to Allow Properly Noticed Forensic Accounting Expert to Testify.**<br>10. **Motion to Allow "Metadata" Expert.**<br>11. **Motion to Exclude All Witnesses From Proceedings.**<br>12. **Motion to Exclude Defense Investigator From Witness Exclusion List**<br>13. **Prohibit the Prosecution From Introducing Late-Produced Evidence.**<br>14. **Notice of Intent to Rely on Advice of Counsel Defense.** |

## MEMORANDUM OF POINTS
## AND AUTHORITIES

Denny Bhakta, (Mr. Bhakta), by and through his counsel, John D. Kirby, Esq., hereby file this Memorandum of Points and Authorities in Support of Mr. Bhakta's Motion in Limine.

## I
## BACKGROUND

On December 1, 2021, a grand jury returned an Indictment that alleged Mr. Bhakta committed securities fraud, money laundering and criminal

forfeiture.  ECF No. 1.  Count 1, securities fraud; Count 2, money laundering in the amount of $100,000.

On August 9, 2023, a grand jury returned a Superseding Indictment. ECF No. 64. In addition to the charges in the original Indictment, the Superseding Indictment charged Mr. Bhakta with 18 counts of bank fraud, five additional counts of money laundering and criminal forfeiture.

The bank fraud charges are based on eighteen Paycheck Protection Program ("PPP") loans, Mr. Bhakta applied for and received between April 2020 and July 2021.  The five money laundering charges are based on Mr. Bhakta's use of PPP loan funds at casinos June 29, 2020, and between July 16, 2021 and July 23, 2021.

Mr. Bhakta was arraigned on the Superseding Indictment, August 11, 2023.  Mr. Bhakta plead not guilty on all charges.

## II
## MOTION IN LIMINE

### 1.  Motion to Exclude All W-2, 940 and 941 Forms.

### a.  The Government Did Not Provide Native Files that Would Allow Defense to Conduct a Forensic Examination of the W-2s, 940s & 941 Forms to Determine Their Origin.

Mr. Bhakta moves the court to exclude all W-2, 940 and 941, annual "payroll summary report" and as such documents lack metadata indicating the

author of such documents.  Mr. Bhakta contends that he did not author these documents and without the native documents he cannot substantiate his claim. Repeated requests for native files have been made by the defense.  Without the metadata contained on the native documents, it is impossible to determine who authored these documents.

More importantly, there is no evidence to indicate that these documents were uploaded using Mr. Bhakta's Kabbage user account.  Mr. Bhakta has made repeated requests for discovery pertaining to Kabbage's portal.  The government has not provided Mr. Bhakta with a copy of its subpoena request to Kabbage, nor has it responded to repeated email[1] requests for access what is referred to in the Kabbage Inc.'s  Affidavit of Certified Response (Bhakta PPP 000037) which refers to an "enclosed hyperlink"  and confirms that  documents accessible via the hyperlink are business records of Kabbage.[2]

Federal Rules of Evidence 1002 provides: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Mr. Bhakta contends that he did not author these documents and without the native documents he cannot substantiate his claim.

---

[1] See Exhibit G

[2] See Exhibit H

### b. <u>PPP Loans Were not a Regularly Conducted Business Activity</u>.

Even beyond the metadata issue, the PPP loan documents cannot be admitted as business records in this case. Prior statements are not hearsay if contained in business records as defined in Fed. R. Evid. 803(6). Relevant requirements are that, the record was kept in the course of "regularly conducted activity," that "making the record was a regular practice of that activity," and that "that documents were not created for "personal purpose[s] … or in anticipation of any litigation so that the creator of the document 'had no motive to falsify the record in question.'" <u>United States v. Kaiser</u>, 609 F.3d 556, 574 (2d Cir. 2010).

Here, PPP loans were not a regularly conducted activity by either the banks or the Fintechs. The PPP loans were an anomaly, not a regular business practice. See First Superseding Indictment at p. 3, (the CARES Act was "designed to provide emergency financial assistance."). The process was short-lived, lasting from March 2020 until May, 2021. Records relating to PPP loans were not "regularly conducted activity." F.R.E. 803(6). Thus, the Court should decline to allow self-authentication of business records for PPP activity. Additionally, it is unclear whether the records produced in discovery were prepared and compiled by Bank of America in order to respond to a grand jury subpoena, as opposed to kept in the ordinary course of business.

### c.   **The PPP Documents Contain Double-Hearsay.**

Some of the records provided by the Government contain inadmissible hearsay within hearsay, even if the business records exception is otherwise met. These records include information that comes from outside sources, which the Fourth Circuit has held prevents those records from coming in under the business records exception. In United States v. Pendergrass, 47 F.3d 1166 (4th Cir., 1995) (unpublished), the court reversed a defendant's money laundering conviction where purported business records should not have satisfied the hearsay exception.

The court held: When the source of the information in the business record is an outsider, the only way to save the record from the jaws of hearsay exclusion is to establish that the business recipient took precautions to guarantee the accuracy of the given information. Id. at *5 (citing United States v. McIntyre, 997 F.2d 687, 700 (10th Cir., 1993) and United States v. Patrick, 959 F.2d 991, 1001 (D.C. Cir., 1992). The court noted that "an essential link in the trustworthiness chain fails…when the person feeding the information does not have firsthand knowledge." Id. (citing McCormick on Evidence, § 290, 274 (4th Ed.,1992).

Here, the same issue arises. The banks supplying the records will not be able to demonstrate that steps were taken to verify the information, such as loan applications that were submitted to them. The banks did not verify the information provided by Bhakta et al in its' applications, and that information should not be admitted under the business records exception.

### 2. Motion to Exclude Use of Evidence in Prosecutor's Opening Statement.

An opening statement is intended to forecast to the jury the evidence they will see and hear during the trial. It should therefore reflect the evidence that the party intends to introduce at trial. Because the Court does not know whether the testimony is admissible until offered at trial, the government should not be allowed to introduce evidence (or charts or exhibits illustrating unadmitted evidence) during its opening statement.

In most cases, jury selection is completed on the first morning of trial, and counsel should be prepared to give opening statements and begin presentation of evidence immediately thereafter.  The prosecution should not be permitted to offer non-admitted evidence during voir dire and opening statement.

Thus, opening statements "should be limited to a statement of facts which the [party] intends or in good faith expects to prove." <u>Leonard v. United States,</u> 277 F.2d 834, 841 (9th Cir. 1960); see also United States v. McCabe, 131 F.3d 149, at *4 [published in full-text format at 1997 U.S. App. LEXIS 33704] (9th

Cir. 1997) (unpublished) (quoting United States v. Dinitz, 424 U.S. 600, 612, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976)). (noting that opening statements should not "refer to matters that are not to be presented as evidence").

### 3.  Motion to Exclude Mr. Bhakta's Proffer Statement.

On February 22, 2022, Mr. Bhakta signed an agreement with the United States with regard to the use of his proffer statement.  The United States agreed not to offer in evidence in its case-in-chief any statements made during his proffer.

In relevant part, the following exceptions were agreed to:

1.  To pursue leads and find other evidence;
2.  If Mr. Bhakta lies to federal agents, committed perjury, or otherwise obstructed justice during or after the proffer statement;
3.  If Mr. Bhakta testifies, to cross-examine him or refute evidence or to refute evidence, arguments, statements, and/or representations offered or elicited by him or on his behalf at trial;
4.  If the court asks the United States a direct question about information Mr. Bhakta disclosed in the proffer.

Unless Mr. Bhakta or his attorneys breach this agreement, any statements Mr. Bhakta made during the proffer session should be excluded from use at trial. See Exhibit A (signed agreement for use of proffer).

Hence, the admissibility of the proffer statement would be triggered if Mr. Bhakta testified, or if he or his attorney presented any evidence or made any arguments and/or representations at trial that were inconsistent with his proffer statements. See United States v. Rebbe, 314 F.3d 402, 407 (9th Cir. 2002),

quoting <u>United States v. Krilich</u>, 159 F.3d 1020, 1025 (7th Cir. 1998) ("Introduction of the statements thus was proper if either his testimony or evidence that he presented through the testimony of others contradicted the proffer.") (citations omitted).

### 4.  Motion to Exclude Avanindrakumar Patel's Original SEC Report.

To date, the Government has failed to provide Patel's original SEC report for our inspection. Including his communications with the US Secret Service (docket# 74).

Rule 16(a)(1)(E) provides: Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

"The sanctions to be imposed for failure to comply with discovery rest in the sound discretion of the trial court." <u>See</u> <u>United States v. Altamirano-Ramirez</u>, 1993 U.S. App. LEXIS 31025, (9th Cir. 1993), <u>quoting United States v. Burgess</u>, 791 F.2d 676, 681 (9th Cir. 1986) (citations omitted).

Mr. Bhakta moves the court to exclude Patel's SEC report unless the original report is provided prior to trial.  In addition, the defense reserves the

right to object to the introduction of Mr. Patel's report to the SEC on hearsay or other evidentiary grounds.

### 5.  Motion to Exclude Partial Subscription Agreements.

Counsel for Mr. Bhakta, in a previous Discovery motion requested production of all original investor agreements ("subscription agreements") that the Government planned to use in their case-in-chief.  The government has provided some but not all of the subscription agreements in this case, and in some cases only partial agreements.

Mr. Bhakta moves the court to exclude all subscription agreements <u>not</u> provided before the discovery cut-off in this case.

As noted above, in several circumstances the government in discovery has produced several disjointed fragments of the subscription agreements (and related documents) in this case.  In particular, the government has produced the second page of Exhibit E to the Private Placement Memorandum that was part of the subscription agreements. This second page of Exhibit E contains projected profit & loss numbers for the TurboRes business model.  However, the government has not produced the first page of Exhibit E, which clearly states clearly that the profit & loss numbers contained in the Exhibit are indeed projections.[3]  Exhibit E, along with the entire investment agreements were

---

[3] <u>See</u> Exhibit I.

produced by Mr. Bhakta to the SEC in discovery, and was also produced by the

defense in this case.  The government should be precluded from introducing

only a portion of Exhibit E in an attempt to infer that the profit & loss numbers

contained in the exhibit were represented to be actual as opposed to projected.

The principle that a full document should be introduced, as opposed to a

fragment or portion of the document, is set forth in what is colloquially known

as the "rule of completeness."  <u>See, e.g.</u>, <u>United States v. Collicott</u>, 92 F.3d 973,

982 (The rule of completeness requires that a full document must be introduced

when misunderstanding or distortion can be averted only through presentation of

another portion).  <u>See also</u> <u>United States v. Castro-Cabrera</u>, 534 F. Supp. 1156,

1160 ("[T]he Rule of Completeness was designed to prevent the Government

from offering a 'misleading snippet.'").

Here, the government's introduction of only the second page of Exhibit E

of the subscription agreements distorts the meaning of Exhibit E, and requires

the first page of Exhibit E to give context to the document as a whole.

**6.  Motion to Exclude All ARMPVC Created Documents.**

The government should be excluded from producing any promotional

or other materials created and disseminated under ARMPVS, LLC.  This entity

was created by Avanindrakumar ("Andy") Patel, Mukesh Patel, Vishal Patel and

Nishith Patel.[4]  The promotional materials created under this LLC were created by the Patels without the authorization or knowledge of Mr. Bhakta for use in recruiting 3rd party sub-investors by the Patels – who were the initial outside investors in Mr. Bhakta's travel booking business.  There is no evidence that Mr. Bhakta was consulted or even aware of the creation of these promotional materials.  The government should be precluded from introducing these materials in its case against Mr. Bhakta, as he had no hand in creating them and did not authorize their creation or use by the Patels in this case.

**7. Motion for Judicial Notice of Language Contained in Kabbage Settlements.**

Judicial notice under Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute."  Knoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).  A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Id.

Courts have held that factual admissions from previous cases or settlements can be the subject of judicial notice.  See, e.g., Castellucci v. JP Morgan Chase Bank, N.A., 2020 U.S. Dist. LEXIS 152766 (judicial notice of

---

[4] See Exhibit A

settlement agreements).  <u>See also</u>, <u>United States v. Smith</u>, 2021 U.S. Dist LEXIS 213731 (Dist. Guam 2021) (In criminal matters, a court may generally take judicial notice of court filings and other matters of public record); <u>Taylor v. Newsom</u>, 2020 U.S. Dist. LEXIS 9974 (CDCA 2020) (The Court takes judicial notice of these court records and files as well as those of the Court of Appeals for the Ninth Circuit, as necessary therein) (<u>citing Harris v. Cnty. Of Orange</u>, 682 F.3d 1126, 1131-21 (9th Cir. 2012).

Kabbage, Inc., processed nine (9) of the PPP loan applications processed on behalf of Mr. Bhakta, including the loan packages containing the fraudulent W-2s the government seeks to introduce in the case.  Mr. Bhakta seeks to introduce several statements contained in the settlement agreements entered into between Kabbage, Inc. and the Department of Justice related to its' processing of Paycheck Protection ("PPP") loans, and specifically the fraudulent conduct Kabbage undertook as part of its processing of PPP loans.[5]  These statements are subject to judicial notice, and are relevant to Mr. Bhakta's assertion that employees/contractors of Kabbage misused and created documents during its' processing of Mr. Bhakta's PPP loans.

### 8.  Motion to Exclude Witnesses Not Listed by the Government in Its Trial Brief.

---

[5] <u>See</u> Exhibit E (Excerpts of Settlement Agreement between the United States and the bankruptcy estates of Kabbage, Inc. D/B/A KServicing (the "Wind Down Estates") and David Berteletti ("Relator") (collectively "the Parties'), at Sections L(a) & (b) (attached) Case No. 20 cv12114-GAO.

Under Mr. Bhakta's motion for discovery, he requested the Government to identify all victims that will testify at trial.  Mr. Bhakta moves the court to exclude victim witnesses not previously listed.

"Although [Federal] Rule [of Criminal Procedure] 16 does not expressly mandate the disclosure of nonexpert witnesses, it is not inconsistent with Rule 16 and Rule 2 for a court to order the government to produce a list of such witnesses as a matter of its discretion." United States v. W.R. Grace, 526 F.3d 499, 510 (9th Cir. 2008) (en banc) (emphasis in original). "The rule does not entitle the defendant to a list of such witnesses, but by the same token it does not suggest that a district court is prohibited from ordering such disclosure." Id. at 511 (emphasis in original).

Requiring the government to produce a list of the victim witnesses it intends to call will prevent unfair surprise, and also prevent the need for in-trial continuances should the government call a previously undisclosed witness.  The government, including the SEC, had variously claimed between thirty (30) to more than forty (40) victims in this case,[6] and yet have only identified twelve (12) victims by name during the course of this case.  The government should be prevented from calling some previously undisclosed "victims" without notice during trial.

---

[6] See Exhibit C (SEC complaint, page two); (Exhibit D) (February 2, 2024, hearing transcript, page 5).

### 9.  Motion to Allow Properly Noticed Forensic Accounting Expert to Testify.

This District routinely permits experts to testify in the area of forensic accounting analysis when, as here, it is relevant to the case. Ms. Kessler has specialized knowledge that "will help the trier of fact to understand the evidence or to determine a fact in issue." See Fed. R. Evid. 702, see also adv. cmt. ("The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge.")

The advisory committee notes make clear that the "the expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training, or education.'

Thus, within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers or landowners testifying to land values."  Fed. R. Evid. 702, adv. cmt.

Ms. Kessler is qualified to testify as an expert in the area of forensic accounting analysis.  Ms. Kessler has been the Managing Director of CBIZ Forensic Consulting Group since 2017.  She has performed forensic accounting and business valuations for over twenty-five years.  She has previously been qualified as and testified as an expert in forensic accounting numerous times.

Ms. Kessler, per the expert notice filed in this case on September 25, 2024, will testify as to her analysis of the financial transactions related to Turbores and Mr. Bhakta's related business entities to determine the amount of money that was invested into those entities, by whom, and what happened to that money once it was invested.

### 10. Motion to Allow "Metadata" Expert.

Mr. Neil Broom is the President and Laboratory Director of Technical Resource Center. He is a certified computer examiner, a licensed private investigator, and has been qualified as an expert witness in federal and state court for computer forensics.

Mr. Broom will testify as to the lack of any meaningful metadata of the W-2[7], that there is nothing showing that this W-2 was prepared by or originated from Mr. Bhakta.

Mr. Broom will  testify that the August 9 email[8] which was provided to the SEC by Andy Patel can only show that at some point on August 9, 2017, Mr. Bhakta email communicated with Andy Patel's server, and that Andy Patel forwarded an email from Mr. Bhakta to Mike Patel purporting to have three attachments (whose attachments could have been added by Andy Patel ) and whose subject line could have been modified by Andy Patel.  Mr. Broom will also testify that the Government could have searched the two computers from Andy Patel and Mike Patel as well as Andy's Samsung GALAXY S 5 to

---

[7] See Exhibit B (page 8 of governments' motion in limine with W2 on page)

[8] See Exhibit F (August 9 email)

determine whether the attachments originated with Denny Bhakta or Andy Patel.

### 11.Motion to Exclude All Witnesses From Proceedings.

Mr. Bhakta is entitled to exclusion of government witnesses as a matter of law. Federal Rule of Evidence 615 provides that at "the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Because the truthfulness of witness testimony and the ability to detect fabricated testimony is best achieved through a comprehensive exclusion order, this Court should extend the scope of its order to cover opening and closing arguments, as well as motion hearings.

### 12. Motion to Exclude Defense Investigator From Witness Exclusion List

The presence of licensed investigator, Mr. Alan Poleszak is essential to the defense and should be exempt from any witness exclusion order. Rule 615 includes an exception to witness exclusion for a "person whose presence a party shows to be essential to present the party's claim or defense." Fed. R. Evid. 615(c). The exception has been applied to permit defense investigators to be present at trial, even when it is anticipated they may testify. See United States v. Ortiz, 10 F. Supp. 2d 1058 (N.D. Iowa, 1998).

As the Ortiz court noted, excepting an essential defense investigator from a witness exclusion order is both authorized by statute and required by considerations of fairness.

Even one case agent available to the government has access to almost unlimited law enforcement investigative resources-federal, state, and local- to perform the necessary footwork if unanticipated issues come up during trial. Against this full panoply of resources available to the government, a criminal defendant can reasonably show the presence of one investigator in the courtroom, who must also then perform the footwork of necessary investigations and testify upon the results of his or her investigations, is "essential" within the meaning of the Rule 615(3) exemption.

Id. at 1066. Mr. Alan Poleszak is the defense investigator in this case and is familiar with the facts and witnesses. It is critical to the defense that he be permitted to remain in the courtroom, so he can respond to witness testimony with prompt investigation and assist defense counsel. Consequently, he should be designated as essential and exempt from witness exclusion orders under Rule 615.

**13. Prohibit the Prosecution From Introducing Late-Produced Evidence.**

Pursuant to Rule 16(d)(2), Mr. Bhakta requests that the Court prohibit the government from introducing any evidence not yet produced in discovery by the discovery cut-off date of September 27, 2024, set by this Court.

On the date of the discovery cut-off date, trial will be approximately three weeks away, and Mr. Bhakta respectfully asks the Court to prohibit the government from introducing any discoverable evidence that it has not yet turned over. Of course, should the government discover any Brady evidence after September 27, 2024, the defense requests that the government immediately produce such evidence.

**14. Notice of Intent to Rely on Advice of Counsel Defense.**

While it is not required by the federal rules of evidence, the defense gives notice that it intends to rely, in part, upon the defense of reliance of counsel. Mr. Bhakta intends to argue that he relied on his attorneys Kaylan Pokala and Susanne Mulvihill for advice related to his securities offers in this case as well as his applications for loans under the Paycheck Protection Program ("PPP"). Specifically, Mr. Bhakta relied upon the legal advice of Mr. Pokala in the development of his stock agreements of 2018, the validity of the exemption of his securities offerings under Section 4(a)(2) of the Securities Act of 1933 and Section 506(b), the private placement memorandum produced in 2018, the eligibility of his businesses under the PPP hospitality rules, and financial

transactions with Avanindrakumar ("Andy"), Mukesh and Vishal Patel related to his hospitality business..

Mr. Bhakta also relied upon the legal advice of Susanne Mulvihill of the firm of Haight Brown & Bonesteel for advice related to the securities exemption under Section 4(a)(2) and Section 506(b), the contents of the convertible note subscription agreements used with his investors, the content of the private placement memorandum for TurboRes, and his investment disputes with Andy, Mukesh and Vishal Patel.

"Advice of counsel" is an affirmative defense that a defendant may seek to prove at trial. See Patterson v. New York, 432 U.S. 197, 211, 97 S.Ct. 2319 (1977).  In a fraud case, an advice-of-counsel defense is "evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an 'unlawful intent.'" United States v. Scully, 877 F.3d 464, 476 (2d Cir. 2017) (quoting United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1194 (2d Cir. 1989).  To warrant an instruction on advice of counsel, a defendant must show that he presented all material facts to his attorney and acted in accordance with the advice he received.  See United States v. Ibarra-Alcarez, 830 F. 2d 968, 973 (9th Cir. 1987); United States v. Grace, 439 F. Supp. 1125 (D. Mo. 2006).

In this case, the defense will prove that Mr. Bhakta presented all material facts to his attorneys in the matters described above, and that he reasonably acted in accordance with their advice in determining his actions.  He will therefore be entitled to an instruction on the advice of counsel defense at the close of this case.

To the extent not already produced, the defense will produce all documents relevant to this defense prior to the September 27, 2014, discovery cut-off.

DATED: September 20, 2024.                    Respectfully Submitted,
                                              /s/John D. Kirby
                                              John D. Kirby,
                                              Attorney for Denny Bhakta


                                              /s/Laura F. Marran
                                              Laura F. Marran
                                              Attorney for Denny Bhakta