TARA K. MCGRATH
United States Attorney
P. KEVIN MOKHTARI
ERIC R. OLAH
California Bar Nos. 253283 / 295513
Assistant U.S. Attorneys
United States Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7540
Eric.Olah@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 21-CR-3352-JLS |
|---|---|
| Plaintiff, | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* (DKT. 92)** |
| v. | |
| DENNY BHAKTA, | Date: October 4, 2024<br>Time: 2:00 p.m.<br>Courtroom 4D |
| Defendant. | |
| | **The Honorable Janis L. Sammartino** |

The United States of America, by and through its counsel, United States Attorney, Tara K. McGrath, and Assistant United States Attorneys P. Kevin Mokhtari and Eric R. Olah, hereby files its response in opposition to defendant's motions *in limine* (Dkt. 92) ("Mot.").

I.   **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE*:**

   1.   **Motion to Exclude All W-2, 940 and 941 Forms**

   Bhakta asks the Court to exclude every fraudulent tax document submitted with his various fraudulent Payroll Protection Program ("PPP") loan applications solely because

"such documents lack metadata indicating the author of such documents." Mot. at 4. But his argument is legally erroneous.

Metadata is data that describes another piece of data. For example, a file may have metadata showing the last date it was saved. A photo may show what camera was used to take the photo. While metadata can help link an individual to a document, the lack of metadata does not mean a document is inadmissible. Nor does it mean a document is inauthentic. That is because any creator of a document can follow "simple steps" to completely "remove metadata" from a document, and following such steps is commonplace.[1] And in many instances, metadata revealing the author of a document is never even created.

In connection with some of Bhakta's PPP loan applications, Bhakta provided falsified tax and wage statements (or purported "summary reports" of alleged W-2 employees). Under the PPP, Bhakta could obtain greater loan amounts if he inflated his alleged payroll costs and the number of employees. The problem for Bhakta, however, was that IRS and EDD records show that Bhakta had no payroll during the relevant period. When banks asked for records to justify the representations made by Bhakta in his loan applications, Bhakta provided things such as falsified IRS documents, wage and earning statements, W2s, IRS Form 941s (quarterly returns), and other documents. Bhakta even claimed as employees many of the same victim-investors he had defrauded as part of the securities fraud scheme. Bhakta submitted the supporting documents to the banks, including at times via his own email address.

As part of this investigation, the United States identified 18 PPP loans obtained from 11 banks. In response to subpoenas, the banks produced records related to the loans Bhakta received. The records included, for instance, loan applications, supporting documentation,

---

[1] *See, e.g.,* University of Michigan, Information and Technology Services, Safe Computing, Consider Metadata When Sending Files, *available at* https://safecomputing.umich.edu/protect-privacy/consider-metadata (last accessed Sept. 24, 2024).

loan notes, and applications for loan forgiveness. The supporting documents varied by the various banks and loans. For example, in addition to falsified IRS and wage records, many of the banks also produced copies of Bhakta's driver's license, articles of incorporation for the entity for which the loan was requested, business certifications, and other business receipts. Lastly, each of the banks provided certifications of a records custodian that set forth the foundation necessary to admit at trial such documents under the business records exception to the general bar on hearsay. These records are thus admissible under Rule 902(11) of the Federal Rules of Evidence, and the United States has provided to Bhakta proper notice of its intent to introduce such documents at trial.

The supporting documents submitted in connection the PPP loans are also highly relevant to prove the bank fraud charges. Indeed, the Superseding Indictment alleges Bhakta "submitted falsified documents to support some of his misrepresentations." Dkt. 64 at 7; *see also id.* at 8 ("For example, in support of his misrepresentations about the number of employees, BHAKTA submitted to financial institutions purported W-2 forms for alleged employees that were, in fact, never employees of any of BHAKTA's entities and never received W-2 forms from the entities."). These documents are thus relevant and should be admitted as certified bank records. *United States v. Siders*, 712 F. App'x 601, 602 (9th Cir. 2017) (affirming conviction and admission of bank records, where district court granted the government's motion *in limine* to admit the records because "the Rule 902(11) certificates properly authenticated the documents as non-hearsay business records"); Fed. R. Evid. 803, Advisory Committee's Note to the 2000 Amendment (explaining the Rule 803(6)'s requirements can be satisfied "without the expense and inconvenience of producing time-consuming foundation witnesses").

Despite being plainly relevant and admissible, Bhakta nevertheless argues that the records should be inadmissible for three reasons. He claims (1) the United States did not provide native files that would allow forensic examination of the W-2s and 940/941 Forms to determine their origin; (2) that PPP loans were not "regularly conducted business

activity"; and (3) that the PPP documents he submitted contain "double-hearsay."  Mot. at 3-7.  Each of his arguments are factually and legally flawed.

First, Bhakta claims the supporting tax documents should be excluded because the defense has been unable to identify who authored the documents.  Mot. at 4.  In response to a defense request, on June 3, 2024, the United States produced native versions[2] of the supporting tax documents that were submitted along with Bhakta's PPP loans.  The suggestion that the United States has not provided the requested documents despite "[r]epeated requests for native files" is simply not true.[3]  These native records included, for example, IRS Form 940, 941, W-2s, and Payroll Summary Reports, that the banks provided in response to subpoenas.

While metadata linking the documents to Bhakta would be highly inculpatory, the *lack* of metadata in the supporting documents regarding the author of the documents is neither surprising nor a basis to exclude the documents.  *See United States v. Eiker*, 2017 WL 6459510, *5 (E.D. Va. Dec. 18, 2017) (denying defendant's motion to exclude files that "lack the relevant metadata," explaining the United States can satisfy its "light" burden on authentication of the files without metadata); *see also id.* ("The burden on the proponent is a light one, as the ultimate determination as to whether a piece of evidence is what its proponent claims rests with the jury.").  And it is axiomatic that Bhakta's argument goes to the weight not the admissibility of the evidence.  *See, e.g., United States v. Morel-Pineda*,

---

[2] Most records received from banks are in the form of PDFs.  Native versions mean the original, non-bates stamped versions of the documents as they were received from the financial institution.

[3] As detailed below, on May 22, 2024, defense counsel for the first time requested in an email "that some of the discovery (W-2s, 940-41s & 1099s) be produced in 'native' format" because he wanted "an expert to examine the metadata for those documents."  On June 3, 2024, the United States explained to defense counsel via email that it understood the request for native versions of "*the tax records* as the banks produced them to the United States" and would soon be producing 23 such documents; as promised, the United States produced to Bhakta the native versions of the 23 documents the same day.

829 F. App'x 187, 191 (9th Cir. 2020) ("Any argument that the messages were sent by some other person [and not defendant] went to weight, not admissibility.").

Moreover, metadata is only one of several possible links between Bhakta and the fraudulent supporting tax records. In fact, in many instances, the fraudulent supporting records correspond with misrepresentations made by Bhakta on the face of his loan applications themselves. In other instances, the fraudulent documents were attached to emails sent by Bhakta—from his email address—to the bank. *See United States v. Smith*, 609 F.2d 1294, 1301 (9th Cir. 1979) (rejecting defendant's challenge to the admission of hotel records he denied signing, explaining that "[c]ircumstantial evidence connecting [defendant] with the documents was sufficient").

Nor is Rule 1002 a basis to exclude the evidence. The United States may admit copies of records that various banks produced in response to grand jury subpoenas, which are accompanied by certifications that renders the records admissible under Rule 902(11). *See* Fed. R. Evid. 902(11) (explaining that the "original *or a copy* of a domestic record that meets the requirements of Rule 803(6)(A)-(C)" is self-authenticating evidence).

Similarly unavailing is Bhakta's argument that the PPP loans were not regularly conducted business activity. Bhakta concedes that business records are admissible under Rule 803(6). Mot. at 5. But he claims all "[r]ecords relating to PPP loans" are not business records under Rule 803(6) because, he contends, "PPP loans were not a regularly conducted activity[.]" *Id.* As with his prior motion, Bhakta fails to identify any supporting authority.

It is the business records custodian—not Bhakta—that certifies the scope of a business and what records are created and kept in the ordinary course of business. And plainly it is within the ordinary course of a bank's business to receive, evaluate, and process loans. Every PPP loan document that the United States will admit at trial was produced with an accompanying business records certification (that has in turn been produced to Bhakta). Each of those certifications complies with Rule 803(6), including the statement that the record was kept in the course of a regularly conducted activity of the business.

Because the certifications satisfy Rule 803(6), the records are admissible and self-authenticating under Rule 902(11).

Lastly, Bhakta argues that the documents contain inadmissible hearsay within hearsay. He complains that because the banks did not take steps to verify the information contained in the fraudulent tax documents, they should not be admitted. But Bhakta's argument fundamentally misses the point. The United States is not introducing the fraudulent supporting tax documents to prove the truth of the matter asserted in those documents. To the contrary, the United States does not believe the information contained in those falsified W-2s, IRS Form 940/941s, or summary reports are true at all. Instead, these records are being admitted to demonstrate that Bhakta falsified records in order to be approved for loans and to inflate the amount of the loans under the PPP loan program. There simply is no hearsay issue, because they are not being admitted to prove the truth of the matters asserted therein.

Moreover, the fraudulent supporting documents are also admissible for their effect on the listener. In other words, the banks received fraudulent supporting documentation, relied upon those records, and then issued loans. Any statements contained on the fraudulent documents are also admissible as such. Lastly, any statements made on the fraudulent documents are statements made by Bhakta. It is the United States' position that Bhakta created the fraudulent documents and submitted them to bolster his loan applications. These are therefore statements of a party-opponent. Fed. R. Evid. 801(d)(2)(A).

Of course, courts routinely admit bank records pursuant to Rules 803(6) and 902(11). *See, e.g., United States v. Manibusan*, 529 F. Appx. 818, 819 (9th Cir. 2013) (affirming admission of bank information that defendant provided under Rule 803(6) and as a party opponent admissions under Rule 801(d)(2)); *United States v. Brown*, 2:17-cr-00047(A)-CAS, 2018 WL 739268, *14 (C.D. Cal. Feb. 5, 2018) (granting the United States' motion *in limine* to admit self-authenticating bank records pursuant to Rule 902(11)); *United States v. Brugnara*, No. CR 14–00306 WHA, 2015 WL 1907513, *3 (N.D. Cal. Apr. 23, 2015) (same); *United States v. Gardley*, No. 2:10–cr–236–GMN–PAL, 2013 WL 4857691 (D.

Nev. Sept. 10, 2013 (same). Contrary to Bhakta's suggestion, Rule 803(6) does not require that a business "verify" the accuracy of information provided to the business. *Cf. Siders*, 712 F. App'x at 603 (rejecting Bhakta's "contention that records containing false statements cannot be business records under Rule 803(6)," explaining "[t]he content of a record does not impact the way in which it was received, processed, or maintained. And the statements in the records that the government alleges were false were not offered for the truth of the matters asserted—they were proffered *precisely because* they were false.")

The Court should reject Bhakta's argument that the certified bank records are inadmissible under Rule 803(6) and should admit the records for the reasons stated in the United States' motions in limine.

**2.    Motion to Exclude Evidence in the United States's Opening Statement**

The United States anticipates calling approximately 20 witnesses and moving to admit at least 100 exhibits at trial. Bhakta has identified three expert witnesses he intends to call, and the parties anticipate the trial taking approximately two weeks. A detailed overview of the anticipated evidence is thus critical to juror's comprehension of the case. *United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring) (explaining the purpose of an opening statement is "to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole"). The Court should accordingly grant the United States' motion to allow evidence in opening statement and deny Bhakta's countervailing motion for the reasons stated in the United States' motion.

The cases Bhakta cites do not support his motion to exclude evidence from the opening statement. To the contrary, they make clear that *the entire point* of an opening statement is to present anticipated evidence. Of course, the United States will not reference in its opening statements any evidence it does not in good faith believe will be admitted at trial. The Court should therefore deny Bhakta's motion *in limine*.

/ /

/ /

### 3. Motion to Exclude Bhakta's Proffer Statement

Bhakta seeks to exclude statements he made during a proffer session at the United States Attorney's Office in February 2022. Consistent with the proffer agreement, the United States will not introduce Bhakta's statements made during the proffer session in its case-in-chief. Should Bhakta testify, the United States may cross-examine Bhakta with proffer statements, in accord with the proffer agreement.

### 4. Motion to Exclude a Victim's "Original SEC Report"

Bhakta moves to exclude A. Patel's "original SEC report." Mot. at 9. The Court should deny this motion as moot as the United States does not intend to introduce such a report at trial.

### 5. Motion to Exclude "Partial Subscription Agreements."

The United States does not understand what Bhakta seeks to exclude with this motion. Preliminarily, the United States believes it has produced to Bhakta "all original investor agreements" in its possession; while Bhakta refers to such agreements as "subscription agreements," Bhakta (on behalf of Fusion) and investors generally executed contracts labeled "Capital Note and Terms."

Citing Exhibit I to his motion (a document confusingly labeled "Confidential Private Placement Memorandum" and not bearing the words "subscription agreement"), Bhakta claims the United States "has not produced the first page" of the "projected profit & loss numbers," which allegedly makes clear that the figures were mere "projections." Mot. at 10. Exhibit I, however, does not have a bates number, and it is unclear whether the United States produced (or ever possessed) the document. *See* Dkt. 92-1 at 42-44.

Thus, the undersigned does not understand the accusation in Bhakta's motion that the United States has "produced several disjointed fragments of the subscription agreements" or the suggestion that it intends to admit "subscription agreements." Mot. at 10, 11. At trial, the United States will call multiple victims of Bhakta's securities fraud scheme. Some of these victims will authenticate emails that Bhakta sent to them and attachments thereto. Notably, several victims received from Bhakta in 2019 a single-page PDF clearly stating

profit and loss figures in 2017 and 2018 (without any sort of cover page or claim that the historical figures were mere projections). To the extent the United States intends to admit the entirety of those single-page PDFs, Bhakta's "rule of completeness" objection is baseless.

The Court should deny Bhakta's motion to exclude "partial subscription agreements."

### 6.   Motion to Exclude Documents Purportedly Created by ARMPVC

The United States does not intend to admit in its case-in-chief "materials created and disseminated" by ARMPVC, which consists of a collection of investors that Bhakta defrauded. The Court should deny this motion as moot.

### 7.   Motion for Judicial Notice of an Irrelevant Civil Settlement

The United States has moved for an order excluding evidence concerning Kabbage's civil settlement. As explained in the United States' motion, the Tenth Circuit and at least one district judge in the Ninth Circuit have excluded evidence attacking Kabbage in criminal cases involving PPP fraud. *See United States v. Joseph*, 108 F.4th 1273, 1281 (10th Cir. 2024) (affirming district judge's exclusion of Kabbage's conduct and finding "there was no 'nexus' between Kabbage's shortcomings as a lender and Joseph's intent to defraud federal relief programs"); *United States v. McClellon*, 2:22-CR-00073-LK, 2023 WL 9002865, *6 (W.D. Wash., Dec. 28, 2023) (finding the United States' investigation of Kabbage "in connection with the facilitation of PPP loan fraud" was "irrelevant and inadmissible" in trial concerning defendant's fraudulent PPP loan applications).

Here, too, the Court should exclude evidence and refuse to take judicial notice of the allegations against and admissions of Kabbage pursuant to Rule 401 and Rule 403. *See United States v. Wei Lin*, 738 F.3d 1082, 1085 (9th Cir. 2013) (denying defendant's request to take judicial notice of a police report "irrelevant to our analysis"); *United States v. Lumiguid*, 499 F. App'x 689, 691 (9th Cir. 2012) (affirming district court's refusal to take judicial notice of three statutes "because those statutes were not relevant to the issues the jury had to decide in this case").

//

### 8. Motion to Exclude Witnesses not Included in a Trial Brief

The Court should deny Bhakta's motion. While the United States intends to file a brief identifying all anticipated witnesses, the Local Rules do not require such a filing or otherwise require pretrial disclosure of witnesses. *See* CrimLR 23.1 (parties "*may* file a trial brief prior to commencement of trial") (emphasis added). Further, Bhakta concedes in his motion that ordering pre-trial disclosure of witnesses is discretionary, and that defendants are "not entitle[d]" to such disclosure. Mot. at 14.[4]

### 9. Motion to Allow Testimony from Bhakta's Forensic Accounting Expert

After missing the deadline for expert disclosure several times, Bhakta provided notice of his forensic accounting expert the evening of September 25, 2024. While the United States is struggling to make sense of Ms. Kessler's conclusions—and is concerned that her testimony may in part result in "backdoor" admission of Defendant's self-serving and inadmissible hearsay statements—it does not oppose Bhakta's motion to at least call her as a witness at trial.[5]

---

[4] Although not relevant to any of the motions in limine, the United States disputes Bhakta's claim that the United States has "only identified twelve (12) victims by name during the course of this case." Mot. at 14.

[5] To give some examples of hearsay in Ms. Kessler's report: (1) she claims victims "loaned Fusion Hospitality Corporation money *to develop the software platform*," a fact obviously unsupported by the bank records and inconsistent with anticipated victim testimony that Bhakta repeatedly stated their money would be (and was in fact) used for a different purpose—to pay for hotel rooms that would be (and were) resold to a large airline for a profit; (2) despite not citing any supporting loan documents, Ms. Kessler claims "Bhakta loaned his personal funds to Fusion"; and (3) she categorizes Bhakta's use of money at casinos as "lender repayments" (again, without citing any citing any supporting loan documents).

Bhakta was clearly the source of these and other statements, as the "methodology" section of Ms. Kessler's admits her analysis was based in part on "comments from Mr. Bhakta[.]" *Cf. Wi-LAN Inc. v. Sharp Electronics Corp.*, 992 F.3d 1366, 1375 (Fed. Cir. 2021) (affirming district court's finding that party was "attempting to use Rule 703 as a 'backdoor'"—that is "using its expert as a substitute for a fact witness to circumvent the rules of evidence to admit otherwise inadmissible evidence"); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (affirming exclusion of expert testimony, explaining

The United States will reserve on whether Ms. Kessler should be designated an expert until after it has had the opportunity to voir dire her qualifications.

**10.     Motion to Allow Testimony from Bhakta's Metadata Expert.**

Subject to the same qualifications just stated, the United States does not oppose Bhakta's motion to allow the testimony of Mr. Broom. That said, the United States must advise the Court:

- Based on his report, Mr. Broom reviewed 30 PDFs, then created a table listing the dates on the documents and the dates indicated in the metadata. Two of the PDFs appear twice on Mr. Broom's list; thus, he appears to have reviewed 28 different PDFs.

- Defense counsel selected the documents Mr. Broom reviewed and apparently (and incorrectly) informed him that the "the government is representing these documents are original documents [that Bhakta] presented in order to receive PPP loans."

- As explained above, the United States has produced to Bhakta bates-numbered discovery, generally in PDF.

- The only documents Bhakta has requested the United States produce in native format are the *tax documents* submitted with his PPP loan applications. Specifically, in an email defense counsel sent on May 22, 2024, he for the first time "ask[ed] that some of the discovery (W-2s, 940-41s & 1099s) be produced in 'native' format" because he wanted "an expert to examine the metadata for those documents." And again, on June 3, 2024, the United States explained it understood defense counsel's request for native versions of "*the tax records* as

---

"a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.").

the banks produced them to the United States" and would soon be producing 23 such documents (which were produced the same day).[6]

- Only <u>eight</u> of the PDFs on Mr. Broom's list are tax documents submitted with Bhakta's PPP loans.
- Ten of the PDFs on the list are PPP loan application forms. Bhakta has never disputed the authenticity of the PPP loan applications (as opposed to the supporting documents that he claims *the banks* fabricated). In fact, at the most recent hearing before the Court, defense counsel confirmed that Bhakta both applied for and received the PPP loans.

To the extent Bhakta intends to use Mr. Broom's testimony to challenge Bhakta's connection to the PPP loan application forms, and although never requested by defense counsel, the United States will promptly produce to defense counsel "native" versions of loan application forms.

**11/12.   Motion to Exclude Witnesses from the Courtroom**

The parties jointly request that the Court exclude all witnesses from the courtroom during trial, with the exception of their respective investigative aides, pursuant to Rule 615.

**13.   Motion to Exclude Late-Produced Evidence**

The Court set a discovery disclosure date of September 27, 2024, and the United States has produced over 67,000 pages of discovery before that deadline. While it is unaware of any additional material currently in its possession that is subject to disclosure, the United States opposes the request for blanket exclusion of any evidence produced to Bhakta after September 27, 2024. Rather, in the event the United States seeks to admit at trial material produced after the disclosure date, the United States respectfully requests the Court allow it to explain the basis for any late production before the Court determines whether to admit the item—just as the Court has entertained defense counsel's multiple requests for extensions of expert disclosure deadlines.

---

[6] The United States will submit this email exchange to the Court if requested by the Court or if Bhakta challenges the accuracy of the statements herein.

**14. "Notice of Intent to Rely on Advice of Counsel Defense."**

Defendant's final motion does not request any sort of relief but instead provides notice of his purported advice of counsel defense. While the United States appreciates the notice, it objects to Defendant's claim that he will be "entitled to" a jury instruction on the advice of counsel defense let alone present evidence of his purported defense. Mot. at 21.

The jury instruction on the defense is warranted only if there is "some foundation in the evidence" that Defendant first "made a full disclosure of all material facts to an attorney" (and then reasonably and good faith followed the attorney's ensuing advice). Ninth Circuit Model Criminal Jury Instruction No. 4.11—Advice of Counsel, Comment (2022 ed.) (updated June 2024) ("A defendant is entitled to an instruction concerning the advice of counsel if it has some foundation in the evidence.") (citing *United States v. Ibarra-Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987) (affirming district court's refusal to give the advice of counsel instruction because Defendant "failed to disclose all the material facts to his attorney"); *see also United States v. Scully*, 877 F.3d 464, 476 n.5 (2d Cir. 2017) (explaining the advice of counsel "issue is not for the jury's consideration *at all* absent some evidence of the required facts"). Defendant's unsupported, self-serving, and conclusory assertion—in a motion in limine unaccompanied by a declaration from Defendant—that he made the required fulsome disclosure is plainly insufficient.

Further, the Court should exclude evidence regarding the defense unless and until Defendant makes the required showing. Where the defendant has simply not satisfied a formal advice of counsel defense, courts have limited or excluded the admission of evidence about the involvement of attorneys. *See, e.g., S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) (precluding references to the involvement of counsel pursuant to Rules 401 and 403, where defendant could not satisfy elements of true advice of counsel defense, because "a lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction. Likewise, the fact that lawyers saw and commented on disclosure language could be understood as 'blessing' the sufficiency of that disclosure. This misunderstanding

13

would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense."); *United States v. Sterritt*, 21-CR-193 (KAM), 2023 WL 7386660, *7 (E.D.N.Y. Nov. 8, 2023) (denying securities fraud defendant's "motion in limine to assert an advice-of-counsel defense" and explaining in part defendant "is precluded from asserting a generalized advice-of-counsel defense"); *United States v. Kaneshiro, et al.*, No. 22-cr-00048-TMB-NC, 2024 WL 1183124, at *5 (D. Haw. Mar. 19, 2024) ("[A]n 'involvement of counsel' instruction reflecting an incomplete advice-of-counsel defense would be strongly disfavored due to the severe risk of confusion and unfair prejudice."); *S.E.C. v. Lek Sec. Corp.*, No. 17-cv-1789-DLC, 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019) (precluding "references to counsel's communications" because, among other things, they were "not relevant in the absence of an advice-of-counsel defense" and "any probative value of such references is substantially outweighed" by, among other things, "the risk that such references will sow confusion and mislead the jury by suggesting that counsel … fully informed … approved" a transaction); *United States v. Ray*, No. 20-cr-110 (LJL), 2022 WL 1004961, *3 (S.D.N.Y. Apr. 1, 2022) ("[N]o defendant is entitled to present evidence of the advice of counsel unless the elements of the advice of counsel defense can be established. 'If, after the [pretrial] hearing, the court finds that the defendant's evidence is insufficient as a matter of law to establish the defense, the court is under no duty to give the requested jury charge or to allow the defendant to present the evidence to the jury.'") (quoting *United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997)); *United States v. Way*, No. 1:14–cr–00101–DAD–BAM–1, 2018 WL 3062159, *8 (E.D. Cal. June 19, 2018) ("[T]he court still does not have sufficiently specific information before it to conclude that defendant Way is entitled to present an advice of counsel defense or to a jury instruction with respect to such a defense.")

      Finally, as part of the predicate to lodge such a defense, a defendant must produce "all documents concerning their intended advice of counsel defense." *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018). "[E]ven otherwise-privileged communications that defendants do not intend to use at trial, but that are relevant to proving

14

or undermining the advice-of-counsel defense, are subject to disclosure 'in their entirety.'" *Id.* (citations omitted; emphasis in original); *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."); *United States v. Manlove*, No. CR 15-40-M-DLC, 2017 WL 416842, at *4-5 (D. Mont. Jan. 30, 2017) ("The government is entitled to discover information which may support or refute Manlove's advice of counsel defense. . . . The documents that must be produced include, at minimum, those which are relevant to [Attorney] Cotner's expected testimony, including those addressing the following issues: (1) Manlove's disclosure to Mr. Cotner of any and all facts relevant to the proof of claim; (2) Mr. Cotner's specific advice to Manlove regarding filing the proof of claim; and (3) Manlove's reception of Mr. Cotner's advice."); *United States v. Hatfield*, No. 6-550, 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010) (holding that if defendants "intend to rely on an advice of counsel defense" they must "disclose all documents concerning" the defense including "not only those documents which support [their] defense, but also all documents (including attorney-client and attorney work product documents) that might impeach or undermine such a defense").

    In sum, the United States respectfully requests an order that Defendant produce to the United States all documents concerning his intended advice of counsel defense, and requests the Court exclude at trial any evidence concerning the defense unless and until Defendant makes the required evidentiary showing.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

## II. CONCLUSION

The United States respectfully requests that the Court deny Bhakta's motions *in limine*, except those that the United States does not oppose (motions numbered 4, 6, and 9-12).

DATED: September 27, 2024

Respectfully submitted,

TARA K. MCGRATH
United States Attorney

*/s/ P. Kevin Mokhtari*
P. KEVIN MOKHTARI
ERIC R. OLAH
Assistant United States Attorneys