JOHN D. KIRBY
CA Bar No. 149496
The Law Office of John D. Kirby
401 West A Street, Suite 1150
San Diego, CA 92101
Tel (619)557-0100
jkirby@johnkirbylaw.com

LAURA F. MARRAN
CA Bar. No. 200374
NY Bar. 2310983
Columbia Place, 401 West A. Street
San Diego, CA 92101
Tel (858) 699-0375
lauramarranattorney@gmail.com

Attorneys for DENNY BHAKTA

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
**(JUDGE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES GOVERNMENT, | Case No. 21-CR-03352-JLS-1 |
| Plaintiff, | |
| vs. | DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTIONS IN LIMINE |
| DENNY T. BHAKTA | |
| Defendant | |

**MEMORANDUM OF POINTS**
**AND AUTHORITIES**

Denny Bhakta, (Mr. Bhakta), by and through his counsel, John D. Kirby and Laura Marran, Esq., hereby file this Response to the Government's Motions in Limine.

*U.S. v. BHAKTA*
*21-CR-03352-JLS-1*

1

# I.
## RESPONSE TO GOVERNMENT'S MOTION IN LIMINE

1. Government's Motion to Admit Defendant's Statements Should be Denied.

In *United States v Stringer* 535 F. 3d 929 (9th Cir. 2008), the Ninth Circuit noted that "[t]he Supreme Court has held that the government may conduct parallel civil and criminal investigations without violating the <u>due process clause</u>, so long as it does *not act in bad faith*." (emphasis added) *Id.* at 936.

In Mr. Bhakta's case we believe that the Government did act in bad faith by having every intention of prosecuting Mr. Bhakta criminally; while simultaneously conducting a civil SEC investigation to obtain sworn testimony it would eventually use in its criminal case. The SEC case was initiated by a whistleblower complaint lodged by Avanindrakumar "Andy" Patel, Mr. Bhakta's "uncle" and one of the first investors in Fusion. The complaint was given priority by one of the SEC prosecutors, Alka Patel, who is close family friends with Andy's civil attorney Sunil Brahmbhatt,[1] who was opposing

---

[1] Brahmbhatt (Super. Ct. No. 30-2021-01188360) has been disqualified from representing himself in a litigation involving a former client against whom he threatened with criminal prosecution and to use confidential information gathered when he represented him as counsel.

counsel in the civil action against Mr. Bhakta.  Ms. Alka Patel did not recuse herself from the investigation despite the clear conflict of interest.

      a.    <u>SEC Testimony Taken After the FBI Opened a Criminal Investigation and Before Mr. Bhakta was notified that he was a Target should not be used in the Government's Case in Chief:</u>

Mr. Bhakta and his companies were served SEC Subpoenas for document production on July 29, 2021.  Within less than two weeks, on August 11, 2021, the FBI requested the opening of a criminal investigation of Mr. Bhakta and his companies based upon an SEC referral that he was operating an "affinity investment fraud scheme."  Interestingly, despite having already opened a criminal investigation, Mr. Bhakta was not provided a target letter,[2] so that he would realize he was under criminal investigation and could have made an informed judgment as to whether to assert his Fifth Amendment rights during the SEC deposition. The Government appears to have intentionally proceeded

---

[2] There are generally three parts to a federal target letter: the nature of the investigation, a statement of your rights, and often an invitation to testify before the grand jury. A target letter outlines the nature of the crime you're suspected of, the rights you have, including the right to legal representation, and often an invitation to testify before a grand jury or speak to a prosecutor. It is also very clearly putting you on notice that you are a target, not merely a witness the grand jury wants to hear from. (https://www.justice.gov/archives/jm/criminal-resource-manual-160-sample-target-letter)

with an SEC deposition because, unlike the grand jury process in which targets of an investigation are often identified, the SEC is not required to provide any type of target notification for testimony of possible violations of the federal securities laws.[3]  It is very clear that the SEC Deposition was intended to ambush Mr. Bhakta.  The following SEC testimony of Mr. Bhakta on October 6, 2021, represents an example of how pre-meditated the SEC was in its attempt to get Mr. Bhakta to admit to criminal wrongdoing.

> **SEC Q:**  I'm going to share with you now a document 24 marked Government Exhibit 9. Exhibit 9 has Bates number 25 AP 00243 in the lower right. In the upper right, it has the Wells Fargo symbol. In the upper left, it says Platinum Business Checking Account number ending 6589. It's a seven-page document. The first page bears the date, June 1, 2017, to June 30 of 2017. And then in the down a little bit on the left, it says Fusion Hotel Management LLC. It provides an address, 9984 Scripps Ranch Boulevard. It appears to be a June 2017 statement for Fusion Hotel Management accounting ending 6589 at Wells Fargo. Do you recognize Exhibit 9?
> **BHAKTA A**: I do recognize that as being a Wells Fargo statement. Yeah.
> SEC Q Did Fusion Hotel Management have an account ending 6589 at Wells Fargo in June of 2017?
> **BHAKTA A**: Yes, it did

---

[3] The Supreme Court, in *SEC v. O'Brien*, 467 U.S. 735, 750 (1984), noted that "the imposition of a notice requirement on the SEC would substantially increase the ability of persons who have something to hide to impede legitimate investigations by the Commission." Citing the SEC's broad investigatory responsibility under the federal securities laws, the Court found no statutory, due process, or other standard regarding judicial enforcement of such subpoenas to support the proposition that notice is required. Although some parties involved in investigations eventually may be named as defendants or respondents in **subsequent litigation**, the SEC does not have targets of its inquiries or investigations.

**SEC Q**: Take a look on the second page. There's a --it's heavily redacted. Do you see that?
**BHAKTA A**: Yes.
**SEC Q**: Did you do those redactions?
**BHAKTA A**: I don't recall if I did them or if it was through counsel.
**SEC Q**: Did you share a copy of this document with Andy Patel?
**BHAKTA A**: It could have been one that was in that High Tail upload.
**SEC Q**: Take a look at page 2. Page 2, you can see towards the bottom, I'll zoom in for you. Under debits, there's a June 19 debit of $2,728,740 and the beneficiary is Hilton at Bank of America. Do you see that?
 **BHAKTA A**: I do.
**SEC Q**: Did FHM ever make a payment to Hilton of $2,728,740?
**BHAKTA A**: Nope.
**SEC Q**: Well, why does this document reflect a transfer in that amount to Hilton?
**BHAKTA A**: Yeah. I don't recall the transaction like that ever happening with Hilton.
**SEC Q:** And did you create this document? Exhibit 9?
**BHAKTA A**: No. I mean, it's -- that number is not something that would -- I would have created. That's not -- that seems really, really odd.
**SEC Q**: It -- do you have -- can you explain why this document would reflect that number and transaction?
**BHAKTA A**: No. That transaction never took place. So, it's not something that I recall FHM ever remitting to Hilton.
**SEC Q**: Did you ever edit or revise an FHM bank statement and send it to Andy Patel?
**BHAKTA A:** No.
**SEC Q**:   Did you ever fabricate a bank statement and send it to Andy Patel?
 **BHAKTA A**: No.
**SEC Q**:  Did you ever edit or revise an FHM bank statement and send it to Mukesh Patel?
 **BHAKTA A**: No.
**SEC Q**: Did you ever edit or revise an FHM bank statement and send it to Vishal Patel?
**BHAKTA A**: No.
**SEC Q:** On the same page 2, you can see there's an entry, June 19, it shows $120,000 deposit from AS Patel at the Bank of the Panhandle. Do you see that?
**BHAKTA A**: I do.

>**SEC Q**:  Is that a deposit FHM received from Andy Patel?
>**BHAKTA A:** Yes, it is. I believe his other -- it's either his or it's listed on here under Ranjanben.
>**SEC Q:** What did FHM do with the $120,000 it received from them on June 19?
>**BHAKTA A:**   Yeah. FHM immediately went into registering for these RFPs and I guess within days, Andy Patel reached back out with Mukesh Patel now, first contact, and Vishal Patel wanting to talk about building another business out of the RFPs.

Not surprisingly, within less than two weeks of Mr. Bhakta's testimony (in response to a follow up email from Mr. Bhakta's counsel, Jonah Toleno asking is the SEC had a plan for follow up, SEC Attorney Jasper, says "Thanks Jonah. I don't currently have plans for a second OTR. I'll let you know if those changes." October 26, 2021 (BHAKTA-RECIPROCAL-000078).  With the sworn testimony secured, the SEC had performed its function of getting sworn testimony from Mr. Bhakta for his ongoing criminal investigation.  There was no further need for follow-up.

    b.  <u>Mr. Bhakta's Proffer Statements:</u>

  On February 22, 2022, Mr. Bhakta participated in a proffer session with the government.  The government apparently now seeks to introduce Mr. Bhakta's statements from that proffer session.

  As an initial matter, it is clear from the plain language of the proffer agreement that the government may not use Mr. Bhakta's statements in his case-in-chief.  Further, the government may only use Mr. Bhakta's statements during

the proffer session if he testifies inconsistently, or to refute evidence, arguments or representations offered or elicited by the defense that are inconsistent with Mr. Bhakta's statements from the proffer session. See, e.g., United States v. Rebbe, 314 F.3d 402 (9th Cir. 2002).

    2.    <u>Government's Motion to Admit Business Records.</u>

In its original Motions in Limine ("GMIL"), the Government asks this Court to admit over 40,000 pages of documents as purported "certified business records"[4]. In its Supplemental Motion in Limine ("GSMIL"), the Government adds to this request with over 20,000 additional documents as "certified business records." The authority cited is Fed R. Evid. 902 (11) which is purportedly satisfied by "fill in the blank forms" signed by an employee at the bank. These forms essentially state the following: that such records were made: 1) at or near the time of the occurrence of the matters set forth by (or from information transmitted by) a person with knowledge of those matters; 2) such records were kept in the course of a regularly conducted business activity; 3) the business activity made such records as a regular practice; and 4) if such records are not the originals, such records are duplicates of the originals.[5]

---

[4] These 40,000 documents are represented by a series of Bates stamps as set forth in the left-hand column of a five-page chart: MIL Exhibit 1 (CR 78-1). The right- hand column of the chart represents corresponding certifications. The 20,000 additional documents are represented by a chart contained on page 2 of the SMIL.

[5] The witness offering the documents is thus not required to have personal knowledge of the facts set forth in the records but is required to know about how that record was made and kept, and about the company's recordkeeping practices generally.

The Government suggests that if defense has any dispute, of the admissibility of any record under Rule 803 (6) or Rule 902 (11) it can submit "both the disputed record and certification for the Court's review." Mr. Bhakta respectfully requests that the Government narrow its proposed 60,000 of proposed "business records" into specific categories of documents that the defense can choose to challenge if necessary.

In the meanwhile, Mr. Bhakta does indeed challenge for example, the 18 PPP loan applications and related documents such as W-2 summary reports and W-2 and 940 forms that are contained within the 60,000 pages of the Government's proposed business records for the Court's admission, unless the Government is willing to accede that these applications, reports and forms were in fact made by the bank. Mr. Bhakta is guessing that this is not something the Government is prepared to do as it would make the banks liable for PPP fraud.

In its MIL, the Government makes the unfounded assumption that "employee/ payroll verification documents" were submitted by the Defendant along with his "PPP loan applications" to various lending banks. (See Gov. MIL at 7-8.) This is incorrect.

Mr. Bhakta is adamant that he **did not** submit the fraudulent PPP loan applications, W-2 Summary Reports, nor the individual W-2's and 940's which the Banks then produced as its own "certified business records."  Mr. Bhakta is

also adamant that he did not fill in the monthly payroll amount nor the number of employees on the PPP loan application.

Instead, it was Kabbage (a clearinghouse who partnered banks with borrowers) who provided the client banks with auto-filled values of monthly payroll and number of employees on PPP loan applications based upon documents uploaded to its "Kore" portal.

It is possible that Kabbage mistakenly put 1099 INTs that were uploaded by Mr. Bhakta, and mistakenly calculated them as "monthly payroll" (believing them to be 1099 MISC or independent contractors) then populated an employee count with the number of 1099 INTs provided. A simple mistake by a Kabbage employee could then propel Kabbage to generate summary W-2 reports without Mr. Bhakta's knowledge. Kabbage and/or the Banks also had a motive to do so as they played catch up with requests by SBA for back up information they had neglected to ask for.[6]

For the Court's consideration we will go through an analysis of one such PPP production of "certified business records" to make our points that these documents were not authenticated as having been received by Mr. Bhakta and

---

[6] In fact, many of these banks as recently as June 2024, requested that Mr. Bhakta provide such documentation. These requests are memorialized in recent email communications between Mr. Bhakta and the various banks, for example in June 2024, many of the banks emailed him requesting detailed payroll reports, W-2 statements, 940 statements and the like. (Exhibit B).

appear to have been at the very least assembled (if not prepared) in anticipation of litigation.

BHAKTA-GJ-009-SBOCA- 03 (GMIL Exhibit 1 page 3 of 7) The above referenced document represents a 37- page compilation of documents (SBOCA -03 - SBOCA 3.37.) (Exhibit A) that appears to have been prepared by the Bank of Southern California in response to an investigation/ and or litigation.  When "business records" are made in anticipation of litigation they are considered inherently unreliable.

The first page SBOCA -03 is a cover page entitled "Bank of Southern California" listing an index of documents pertaining to a PPP loan made by the bank to True Vine Hospitality which is charged in count 19 of the Superseding Indictment.

The "Index" for this package of documents lists the following documents)

1) Paycheck Protection Program Application,

2) 940 for 2020

3) W-2 2020 summary report (21 pages)

4) Profit and loss 2020 and

5) Certification of Beneficial Owners.

Then a corresponding Certificate of Authenticity of Business Records in Bhakta GJ-009 SBOCA (000004.0) which appears to be the entire basis for the

Government's request that the Court admit over 40,000 bank documents as business records (Attached as Exhibit C).

In this particular Certificate, Vice President Ms. Walker attests, inter alia that
1. Such records were made at or near the time of the occurrence of the matters set forth by (or information transmitted by) a person with knowledge of those matters;
2. Such records were kept in the course of regularly conducted business activity;
3. The business activity; made such records a regular practice.
4. If such records are not originals, such records are duplicates of the originals.

While it may have been expedient to simply execute the form certification regarding the authenticity and origination of the records being produced in this PPP loan investigation, the banks have failed to provide true and accurate representations to the Government. Many of the records turned over by the Bank were not created by the Bank and therefore the Bank has no knowledge of the circumstances under which they were created. Nor does the bank indicate how these documents came into their possession. The Bank should not be providing an opinion on the admissibility of these documents in evidence.

If the Bank is asserting that the 940, the W-2 summary report, and profit and loss 2020, were documents "prepared" by the Bank of Southern California, then they are claiming responsibility for the fraudulent information contained

therein, or they are claiming they filled the fraudulent information by someone not employed by the bank

Mr. Bhakta adamantly denies any part in preparing the above referenced W-2 reports and 940 forms. He denies preparing any of the W-2's or tax documents contained in any of the PPP loan documents. Mr. Bhakta did however provide1099's to the Lending Banks either directly through the bank portal or through the Kabbage portal where he made his initial application for almost all the PPP loans. These 1099's provided the information that would have been necessary to produce the W-2's, reports of W-2's as well as 940's It is therefore Mr. Bhakta's supposition that either someone at Kabbage or at the lending banks may have generated these forms and reports in order to provide "back up" requested by the SBA.[7]

Who provided these forms or the information that led to filling out these forms is pivotal to the question of Mr. Bhakta's guilt or innocence.  Having these documents admitted as the Bank's business record circumvents that necessary step of inquiry regarding who prepared these fraudulent documents.

The Government has also requested that the Court accept as "business records" supporting certifications of non-related entities:  For example, the

---

[7] Indeed, as recently as June 28, 2024, JPM/ First Republic emailed Mr. Bhakta requesting that he provide a "2019 detailed payroll report, W-2 statements 940 and 941 statements and proof of payroll on February 15, 2020. (Exhibit B).

*U.S. v. BHAKTA*
*21-CR-03352-JLS-1*

**12**

business record certification BHAKTA-GJ-059- CUSTOMERS-0000152 (Exhibit D) which purportedly certifies Customers Bank loan records for Fusion Hotel Management, LLC [BHAKTA-GJ059-CUSTOMERS- 000001 to 0151] contains business records of a different entity, namely Kabbage.  See GJ059-CUSTOMERS  000002-000080 (Exhibit F).

When questioned about this discrepancy the Government initially stated: "We subpoenaed loan records from Customers Bank related to entities tied to your client. They produced loan documents, including from their loan servicer, Kabbage."  The documents themselves tell a different story:  for Example, BHAKTA-GJ-059-CUSTOMERS-000004 is a screenshot of the Kore portal "powered by Kabbage" (see Exhibit G).  It includes event data from "First Republic" and "Bank of America" and no data at all on Customer's Bank. Another, BHAKTA-GJ-059-CUSTOMERS-000065 (Exhibit H) is a screenshot of the Kabbage Servicing Portal Dashboard, and another BHAKTA-GJ-059-CUSTOMERS-000074 (Exhibit I) is a Kabbage screenshot thanking Denny for an application on behalf of TurboRes.

Further along in "Customer's production is BHAKTA-GJ-059-CUSTOMERS-000080 (Exhibit J), whose footer reads: https://kabbage.lightning.force.com/lightning/r/Case/5000e00001pzgQIAAl/view?ws=%2Flightning%2Fr%2FLead%2F00Q0e00001ePZL3EA0%2Fview

As it happens, the "ticket owner" of this document "Patricia Lacrete" happens to have been an employee who worked at Kabbage from 2019- 2021. (https://www.linkedin.com/in/patty-l-5a29272a/details/experience) This example underscores the unreliability of what is purported to have been attested to by the affiant and what has been presented to this Court.

3. <u>Motion to Allow Testimony of Government Summary Witness.</u>
The defendant does not object to the government's use of Mr. Benjamin McDonnell as a "summary witness" in this case. Regardless of the defendant's position of the distinction between a summary witness and an expert witness, the notice provided by the government regarding Mr. McDonnell's testimony (Docket 77), qualifies him as an expert witness.

4. <u>Government's Motion to Admit Summary Charts.</u>
The defense does not object per se to the use of summary charts as an aid to the jury. See e.g., Sam Macri & Sons, Inc. v. U.S. for Us of Oaks Const Co., 313 F.2d 119, 128-29 (9th Cir. 1963) ("It is long established that, where records are voluminous, a summary, either oral or written, may be received in evidence."). However, it is important that the information contained in any summary chart be evidentiary and reliable. The Government proposes taking information from documents found in the Banks' possession with no foundation (such as the number of employees and average monthly payroll and

incorporating it into a "summary chart" compounds to the already unfair mischaracterization that the fraudulent information could only have been provided by Mr. Bhakta.

5. <u>Government's Motion to use Evidence in its Opening Statement.</u> For the reasons set out in Mr. Bhakta's motions in limine (Docket # 92), The defense objects to the government's use of unadmitted evidence in its opening statement.

6. <u>Government's Motion to Admit Additional Expert Testimony.</u> The government for the first time in its supplemental motions in limine moves for the introduction of an additional expert. Specifically, the government has posited FBI S/A Chris Christopherson, an FBI Special Agent, to testify "as an expert regarding his analysis of certain emails obtained during the FBI's investigation." The government's motion does not specify which emails about which S/A Christopherson will testify, nor the details of his proposed analysis. In addition, the defense has not received any sort of report disclosing S/A Christopherson's findings. See Federal Rule of Criminal Procedure 16(a)(1)(g)(iii). The government has therefore not followed the requirements for expert notice, under the federal rules, and S/A Christopherson should not be allowed to testify. The rule on disclosure of experts was amended to avoid unfair surprise during the trial process. See e.g. United v. Yandell, 2023

U.S.Dist. LEXIS 230333 (E.D. CA 2023); Fed. R. Crim. P. 16 advisory committee's note.  The government seeking to introduce a previously unidentified and undisclosed expert, without providing the reporting required under the rule, violates not just the technical aspects of the rule but also the reason the rule was changed.  This late-noticed expert should be excluded.

   7. <u>Government's Motion to Exclude Evidence of Kabbage</u>. Wrongdoing. Kabbage's wrongdoing in the context of the Payroll Protection [loan] Program was wide and deep.  Kabbage entered into two separate settlements to settle fraud charged by the government.  In those settlements Kabbage agreed to pay the government approximately $120,000,000 based upon their fraudulent conduct.

   Kabbage's admitted fraudulent conduct took many modes.  According to the settlements, Kabbage grossly inflated employee compensation, often inflating compensation to in excess of $100,000 (so-called "$100,000 Inflation")[8].  This widespread fraud caused recipients of PPP loans to receive loan forgiveness amounts to which they were not entitled.

   In addition, Kabbage also included ineligible payroll costs from IRS Forms 940, which had the effect of apparently inflating business costs and double counting ("Form 940 Inflation").

---

[8] <u>See</u> Exhibit K.

Kabbage also admitted in the settlement documents that it double counted employees' state and local tax withholdings in determining borrowers' average monthly payroll[9]. This so-called "Salt Inflation" increased the loan amounts of "tens of thousands of borrowers, collectively, by at least one hundred million dollars."[10]

In addition, and in contrast to the government's representation, as explained below Kabbage was involved in the processing of at least nine of the eighteen loans at issue in this case.

With regard to Count 3 of the indictment, Kabbage's loan processing portal shows that Kabbage contacted First Republic Bank and provided the loan referral.[11] Kabbage provided First Republic with the loan documentation.

Similarly as to Count 4 of the indictment, Kabbage's loan portal shows it contacted Bank of America and provided the loan referral, and provided Bank of America with the loan documentation.[12]

As to Count 6, the loan was funded by WebBank, however, as indicated by the government's Bates Numbering, the loan documents came from Customer's Bank, who received the documents from Kabbage.[13]

---

[9] See Exhibit K.

[10] Id.

[11] See Exhibit G.

[12] Id.

As to Count 7 of the indictment, discovery provided by the government indicates that Kabbage was in contact and supplied the documentation for the loan. The government concedes that Kabbage was involved in the processing of this loan (Docket 93, page 6).[14]

As to Count 16 of the indictment, WebBank funded the loan, however, the loan documents were received by Customer's Bank, which received the documents from Kabbage.[15]

In addition, while there is little backup for the loans that form the basis of Counts 5, 8, and 11 – 13, the defense believes that these loans were also processed by Kabbage because the institutions[16] who funded the loans are out-of-state institutions with no connection with Mr. Bhakta. In addition, with regard to Count 5 of the indictment, a notice sent by Kabbage links it to Celtic Bank.

So, Kabbage was involved in at least half, and maybe more, of the PPP loans at issue in the indictment.

In sum, there is a plethora of evidence that Kabbage, which was, as explained below, involved in processing at least half the loans at issue in this

---

[13] Mr. Bhakta's contact with Customer's Bank was entirely through Kabbage Exhibit L

[14] See Exhibit M

[15] See Exhibit N.

[16] See Exhibit O.

indictment, was a bad actor and involved in fraud on a massive scale. While Kabbage did not admit in the settlement agreements to the particular type of fraud complained of by the defense, it is certainly within the realm of reasonable argument that Kabbage was involved in the creation of false documents in the context of the PPP loan program. The government can argue that there is no evidence that Kabbage engaged in this particular type of fraud, and the jury can weigh the evidence, as is their function.

DATED: September 27, 2024.

Respectfully Submitted,

/s/John D. Kirby
John D. Kirby,
Attorney for Denny Bhakta

/s/Laura F. Marran
Laura F. Marran
Attorney for Denny Bhakta