TARA K. MCGRATH
United States Attorney
P. KEVIN MOKHTARI
ERIC R. OLAH
Assistant United States Attorneys
California Bar Nos. 253283/295513
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8402/7540
Kevin.Mokhtari@usdoj.gov
Eric.Olah@usdoj.gov

Attorneys for the United States

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DENNY BHAKTA,<br><br>Defendant. | Case No.: 21-CR-3352-JLS<br><br>**UNITED STATES' TRIAL MEMORANDUM**<br><br>Trial Date:   October 21, 2024<br>Time:            9:00 a.m.<br>Courtroom 4D<br><br>**The Honorable Janis L. Sammartino** |

The UNITED STATES OF AMERICA, by and through its counsel, Tara K. McGrath, United States Attorney, and P. Kevin Mokhtari and Eric R. Olah, Assistant U.S. Attorneys, hereby files its Trial Memorandum pursuant to Local Criminal Rule 23.1.

## I.      STATEMENT OF THE CASE

### A.      The Charges

Defendant Denny Bhakta is charged by superseding indictment with one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R § 240.10b-5; one count of money laundering related to the securities fraud, in violation of 18 U.S.C. § 1957; 18 counts of bank fraud, in violation of 18 U.S.C. § 1344(2); and five counts of money laundering in connection with the bank fraud, in violation of § 1957.  Dkt. 57.

**B.      Trial Status**

A jury trial is scheduled for Monday, October 21, 2024. The United States estimates its case-in-chief to last approximately five court days.

**C.      Defense Counsel**

Bhakta is represented by retained counsel John D. Kirby and Laura F. Marran.

**D.      Defendant's Custody Status**

Bhakta is on bond.

**E.      Interpreter**

The United States does not anticipate any of its witnesses requiring an interpreter.

**F.      Jury Waiver**

Bhakta has not filed a jury waiver.

**G.      Pretrial Motions**

**1.      Discovery Motions**

On January 2, 2022, Bhakta, through prior counsel of record, filed a motion to compel discovery.  Dkt. 13.  The United States has been diligent in providing discovery and responding to supplemental discovery requests.

On January 12, 2024, Bhakta, through current counsel, filed a motion to compel discovery.  Specifically, Bhakta requested (1) the complaint one investor victim filed with the SEC; (2) executed "investor agreements and securities exemptions"; (3) a report of a victim-investor interview; (4) "potentially discoverable" emails between the United States Attorney's Office and an attorney for an investor victim; (5) documents between the case agent and a pawn shop owner concerning the seizure of a vehicle; (6) exhibits "to the deposition or other transcripts of any potential government witnesses already turned over by the government"; (7) communications between one investor victim and the Secret Service; (8) a request, liberally construed, for the identification of investor victims; (9) the audio recording of Bhakta's statements in a proffer session at the United States Attorney's Office on February 22, 2022.

/ /

UNITED STATES' TRIAL MEMORANDUM
21-CR-3352-JLS

A hearing on the motion was held on February 2, 2024, at which time the Court set the expert disclosure deadline of May 22, 2024.  Dkt. 76.  The United States filed its first expert disclosure notice on April 29, 2024.  Dkt. 77.

At a status hearing on May 24, 2024, the Court granted Bhakta's request to continue trial, and reset the trial to October 21, 2024.  Dkt. 81.  The Court also extended the expert disclosure deadline to July 26, 2024.  *Id.*

On July 26, 2024, Bhakta filed a motion requesting to extend the expert disclosure deadline by 30 days.  Dkt. 84.  On August 2, 2024, the Court extended the deadline to August 26, 2024.  Dkt. 86.  On August 27, 2024, after the expert disclosure deadline had lapsed, Bhakta filed a motion to again extend the deadline.  Dkt. 88.  This time over the United States' objection (based on the successive lapsed deadlines), the Court granted a final extension of the expert disclosure deadline to September 25, 2024.  Dkt. 90.  The United States provided a supplemental expert disclosure and Bhakta provided his expert disclosure on September 25, 2024.

**H.    Motions *in Limine***

**1.    Defendant's Motions**

On September 20, 2024, Bhakta filed motions *in limine* to: (1) exclude all W-2, 940, and 941 Forms; (2) exclude use of evidence in the United States' opening statement; (3) exclude Bhakta's proffer statement; (4) exclude a victim's original SEC report; (5) exclude partial subscription agreements; (6) exclude al ARMPVC-created documents; (7) motion for judicial notice of language in Kabbage settlements; (8) exclude witnesses not listed by the United States in its trial brief; (9) allow testimony from a defense forensic accounting expert; (10) allow testimony from  a "metadata" expert; (11) exclude all witnesses from proceedings; (12) exclude defense investigator from the witness exclusion list; (13) prohibit the United States from introducing late-produced evidence; and (14) notice of intent to rely on advice of counsel defense. Dkt. 92.  The United States timely filed a response to Bhakta's motions *in limine* on September 27, 2024.  Dkt. 98.

/ /

At the motions in limine hearing on October 4, 2024, the Court tentatively ruled on Bhakta's motions as follows: the Court (1) denied the motion to exclude all W-2, 940, and 941 Forms; (2) granted the motion exclude use of evidence in the United States' opening statement (unless the parties stipulate to the evidence used); (3) reserved on the motion to exclude Bhakta's proffer statement; (4) found moot the motion to exclude a victim's original SEC report; (5) reserved on the motion exclude partial subscription agreements; (6) found moot the motion exclude al ARMPVC-created documents; (7) denied the motion for judicial notice of language in Kabbage settlements; (8) denied the motion to exclude witnesses not listed by the United States in its trial brief; (9) reserved on the motion to allow testimony from a defense forensic accounting expert;  (10) reserved on the motion to allow testimony from  a "metadata" expert; (11) granted the motion exclude all witnesses from proceedings; (12) granted the motion exclude defense investigator from the witness exclusion list; (13) reserved on the motion to prohibit the United States from introducing late-produced evidence.   As to Bhakta's notice of intent to rely on advice of counsel defense, the Court reserved and made clear Bhakta must make the requisite evidentiary showing before presenting evidence of the defense to the jury and before the Court would instruct the jury on the defense.  Dkt. 107.

### 2.     United States' Motions

On May 10, 2024, the United States filed motions *in limine* to: (1) admit Defendant's statements; (2) admit certified business records; (3) allow the testimony of FBI Forensic Accountant Benjamin McDonnell; (4) admit summary chart; (5) allow the United States to use evidence in its opening statement; (6) allow attorney conducted voir dire; (7) exclude all witnesses from the courtroom; (8) compel defendant to produce reciprocal discovery and exclude defense evidence not timely produced; and (9) compel notice of an advice of counsel defense.

On September 20, 2024, the United States filed supplemental motions *in limine* to: (10) admit additional certified business records; (11) admit certified FDIC records; (12) admit additional expert testimony; (13) exclude irrelevant evidence; and (14) exclude

UNITED STATES' TRIAL MEMORANDUM
21-CR-3352-JLS

Defendant's proposed expert testimony.  Bhakta filed a response to the United States' motions in limine on September 27, 2024.  Dkt. 99

At the motions in limine hearing on October 4, 2024, the Court tentatively ruled on the United States' motions as follows: the Court (1) granted the motion admit Defendant's statements; (2) granted the motion admit certified business records; (3) granted the motion allow the testimony of FBI Forensic Accountant Benjamin McDonnell; (4) reserved the motion to admit summary chart; (5) denied the motion to allow the United States to use evidence in its opening statement; (6) granted the motion to allow attorney conducted voir dire; (7) granted the motion to exclude all witnesses from the courtroom; (8) granted the motion to compel defendant to produce reciprocal discovery and exclude defense evidence not timely produced; and (9) granted the motion to compel notice of an advice of counsel defense; (10) granted the motion to admit additional certified business records; (11) granted the motion to admit certified FDIC records; (12) granted the motion to admit additional expert testimony; (13) granted the motion to exclude irrelevant evidence; and (14) granted the motion to exclude Defendant's proposed expert testimony.

## I.    Stipulations

The parties have discussed but have not agreed to any stipulations of fact.

## J.    Discovery

To date, the United States has (1) produced over 68,000 pages of discovery to Bhakta, and (2) received over 12,000 files of reciprocal discovery from Bhakta.

## II.    STATEMENT OF FACTS

Denny Bhakta is a San Diego, California resident who owned and operated Fusion Hospitality Corporation and Fusion Hotel Management, LLC (collectively, "Fusion"). As alleged in the superseding indictment, Bhakta defrauded investors through the sale of securities issued by Fusion.  The bulk of the securities offered to investors were promissory notes, although Bhakta also offered shares to some investors.  Investors would typically loan money, receive fixed or lump sum interest payments and then be promised the return of their principal.  Since large principal payments would be due at the end of the note terms,

Bhakta would often attempt to get investors to roll their existing notes into new notes. To induce these new securities transactions, Bhakta continued his various false representations regarding Fusion.

During pitches to investors, Bhakta provided slide decks claiming Fusion had contractual relationships with Hilton hotels. Bhakta claimed Fusion obtained blocks of hotel rooms from Hilton and then sold those blocks of rooms for profit to United Airlines. Bhakta represented that Fusion was established and had a track record of profitability. Bhakta claimed he needed additional funding from investors to expand its already profitable business and to enter new markets. To induce victims to invest money (or to continue investing money), Bhakta also sent investors fraudulent bank and other documents purporting to show Fusion was profitable and operating as represented. Contrary to Bhakta's representations to investors, however, the millions of dollars that investors put into Fusion were not being used to grow an established, profitable business. Instead, certified bank records and casino records demonstrate that Bhakta used investor money to pay for Bhakta's personal gambling debts, Bhakta's personal expenses, and to use investors' money to pay other investors in a Ponzi-style fraud scheme. Bhakta also laundered the proceeds, including by transferring $100,000 of investor money to The Cosmopolitan Las Vegas casino in a single transaction. Surveillance video from the casino shows Bhakta signing the cashier's check on the felt of the gaming table at the casino.

In March 2020, the world was in the midst of a global pandemic. In response, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. As part of that legislation, Congress authorized the Paycheck Protection Program ("PPP"), which provided loans to small businesses to pay for payroll and limited other expenses. Bhakta, ever the gambler, doubled-down on fraud. In the PPP loans, Bhakta saw an opportunity to fraudulently obtain more money using Fusion and other companies Bhakta owned and operated, including TrueVine Hospitality and the Manu Bhakta Foundation.

But there was one glaring problem—Fusion and the other entities did not have any actual payroll to show. As part of the investigation, the FBI obtained IRS and California

EDD records for Bhakta's various entities.  Those records demonstrated that Fusion and the other entities Bhakta used to obtain PPP loans had no reported employees or payroll during the relevant periods.

Undeterred, Bhakta applied for 18 separate PPP loans, with 11 different federally insured banks, and claimed numerous employees and tens of thousands in payroll expenses—employees and payroll he created of whole cloth.  In some instances, Bhakta applied for multiple loans for the same entities but with different banks. As part of his loan applications, Bhakta fabricated payroll expenses and submitted fraudulent documents. Bhakta attested that the representations on the bank applications were true and accurate. They were not.  To qualify for larger loan amounts, Bhakta also claimed as "employees" many of the same victim-investors he had defrauded.  In total, Bhakta fraudulent obtained approximately $4.4 million in PPP loans to which he was not entitled. As before, the bulk of that money was used by Bhakta at casinos and to pay personal expenses. Bhakta also laundered the proceeds of the fraudulent PPP loans.   These money laundering transactions are evidenced by certified bank, casino and other records.

In 2021, the Securities and Exchange Commission ("SEC") was investigating Bhakta and Fusion.  In October 2021, Bhakta sat for an audio recorded and transcribed deposition with the SEC.  During his deposition, Bhakta testified under oath that Fusion Hotel Management, LLC was never profitable and that it had never had a profitable year. Bhakta admitted that Fusion Hotel Corporation had never generated any revenue.  In contrast to his testimony under oath, Bhakta had told investors a much different story and provided investors documents purporting to show millions in profits and positive cash flow.

## III.   APPLICABLE LAW

### A.   Count 1 - Securities Fraud (15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5)

The United States must prove beyond a reasonable doubt the following elements:

1. Defendant willfully used a device or scheme to defraud someone, made an untrue statement of a material fact, or failed to disclose a material fact that resulted in making the defendant's statements misleading;

7

2. Defendant's acts were undertaken, statements were made, or failure to disclose was done, in connection with the sale of securities of Fusion Hotel Management, LLC and Fusion Hospitality Corporation;

3. Defendant directly or indirectly used the internet, mails, or telephonic communication in connection with these acts, making the statement, or the failure to disclose; and

4. Defendant acted knowingly.

Ninth Circuit Model Crim. Jury Instruction No. 15.47, Securities Fraud (15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5) (2022 ed.).

"Willfully" means intentionally undertaking an act for the wrongful purpose of defrauding or deceiving someone. Acting willfully does not require that the defendant know that the conduct was unlawful. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted willfully.

"Knowingly" means to make a statement or representation that is untrue and known to the defendant to be untrue or to fail to state something that the defendant knows is necessary to make other statements true in respect to a material act. An act, a statement, or a failure to disclose is done knowingly if the defendant is aware of the act, making the statement, or the failure to disclose, and did not act, make the statement, or fail to disclose through ignorance, mistake, or accident. The government is not required to prove that the defendant knew that his acts, statements, or failure to disclose were unlawful. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making the decision to purchase securities.

It is not necessary that an untrue statement passed through the internet, the mails, or telephonic communication so long as the internet, mails, or telephonic communication was used as a part of the purchase transaction.

8

It is not necessary that the defendant made a profit or that anyone actually suffered a loss.

The term "security" includes any note or stock.  15 U.S.C. § 78c(a)(10).

**B.    Counts 2 and 21-25 - Money Laundering - 18 U.S.C. § 1957**

The United States must prove beyond a reasonable doubt the following elements:

1. Defendant knowingly engaged or attempted to engage in a monetary transaction;
2. Defendant knew the transaction involved criminally derived property;
3. The property had a value greater than $10,000;
4. The property was, in fact, derived from securities fraud for Count 2 or bank fraud for Counts 21 to 25; and
5. The transaction occurred in the United States.

Ninth Circuit Model Crim. Jury Instruction No. 18.7, Money Laundering (18 U.S.C. § 1957) (2022 ed.).

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "financial institution" means a bank insured by the Federal Deposit Insurance Corporation (FDIC).

The term "criminally derived property" means any property constituting, or derived from, the proceeds obtained from a criminal offense.  The government must prove that the defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense.  The government does not have to prove that the defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of securities fraud or bank fraud.

/ /

/ /

UNITED STATES' TRIAL MEMORANDUM
21-CR-3352-JLS

Although the government must prove that, of the property at issue, more than $10,000 was criminally derived, the government does not have to prove that all the property at issue was criminally derived.

**C.      Counts 3-20 - Bank Fraud – 18 U.S.C. § 1344(2)**

The United States must prove beyond a reasonable doubt the following elements:

1. Defendant knowingly carried out a scheme or plan to obtain money or property from the financial institution by making false statements or promises;

2. Defendant knew that the statements or promises were false;

3. The statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property;

4. Defendant acted with the intent to defraud;

5. The financial institution was federally insured.

Ninth Circuit Model Crim. Jury Instruction No. 15.39, Bank Fraud—Scheme to Defraud by False Promises (18 U.S.C. § 1344(2)) (2022 ed.).

In *Loughrin v. United States*, 573 U.S. 351 (2014), the defendant used a forged, stolen check to buy merchandise from a store, which he immediately returned for cash. On appeal he contended there was no evidence he intended to defraud a bank, only evidence that he intended to defraud the store. The Supreme Court held that the government need not prove the defendant intended to defraud a bank, and that § 1344(2)'s "by means of" language is satisfied when "the defendant's false statement was the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control." *Id.* at 363.

**D.      Proof of Federally Insured Status of Banks**

The fifth element of bank fraud requires the government to prove that a financial institution was federally insured on the date the charged offense occurred. *United States v. Chapel*, 41 F.3d 1338, 1340-42 (9th Cir. 1994); *United States v. Ali*, 266 F.3d 1242 (9th

Cir. 2001) (same).  A defendant is not entitled to have the bank's insured status proven solely by direct evidence, i.e., through testimony of an FDIC representative. *United States v. Bellucci*, 995 F.2d 157, 160-61 (9th Cir. 1993).  Instead, "circumstantial evidence of insured status, such as an FDIC certificate of insurance" can be admitted "in place of an FDIC representative's testimony." *Chapel*, 41 F.3d at 1340 (citing *Belluci*, 995 F.2d at 161).  Nor does admission of this certificate to prove the bank's insured status violate the Confrontation Clause. *Id.*

To establish the FDIC certificate of insurance was valid on the date of the offense charged, the government may present a declaration from an FDIC custodian that "after a diligent search of FDIC records, no record was found terminating the [bank]'s insured status." *Id.* at 1341.  Such a declaration is admissible under Fed. R. Evid. 803(10). *Id.* Nor does admission of such a declaration violate the Confrontation Clause. *See Id.* ("And, like the certificate of insurance, admission of [FDIC Custodian]'s declaration did not violate [defendant]'s Confrontation Clause rights.") (citing *United States v. Neff*, 615 F.2dd 1235, 1241-42 (9th Cir. 1980) and *United States v. Hutchinson*, 22 F.3d 846, 852 (9th Cir. 1993)).

A variety of other evidence supporting a bank's insured status at the time of the offense will also satisfy the proof requirements. *See United States v. Darrell*, 828 F.2d 644 (10th Cir. 1987) (collecting cases; listing as sufficient bank certificate of insurance and testimony from bank's cashier that bank was operating under that certificate); *see also United States v. Phillips*, 606 F.2d 884, 887 (9th Cir. 1979) ("uncontradicted testimony of a ranking official of the institution is sufficient to establish that the institution is federally insured").

Here, Bhakta obtained PPP loans from 11 different banks.  To prove those banks were federally insured on the dates of the offenses charged, the government will introduce certified FDIC certificates of insurance as well a declaration of an FDIC representative attesting that there are no records of that the banks' certificates of insurance were valid and not terminated between March 2020 and August 2021, which covers the dates of all the

UNITED STATES' TRIAL MEMORANDUM
21-CR-3352-JLS

1  bank fraud counts.  The government will also present testimony from at least one bank
2  executives as to that bank's insured status.

3  **E.    Certified Business Records**

4        The government will introduce certified business records from various financial
5  institutions and other entities at trial.  Under Rule 902(11) of the Federal Rules of Evidence,
6  business records accompanied by a custodian of records certification are admissible.
7  Notice was provided and ample opportunity has been given for inspection of the records
8  and the certification as both were provided in discovery.

9  **F.    Duplicates**

10       A duplicate is admissible to the same extent as an original unless (1) a genuine ques-
11  tion is raised as to the authenticity of the original, or (2) under circumstances, it would be
12  unfair to admit the duplicate instead of the original. *See* Fed. R. Evid. 1003.

13 **G.    Advice of Counsel**

14       As the Court indicated during the motion in limine hearing, Bhakta should not pre-
15  sent to the jury any evidence regarding his purported good faith reliance on the advice of
16  counsel unless and until he makes the requisite evidentiary showing (i.e., that he made a
17  full disclosure of all material facts to an attorney and then reasonably and in good faith
18  followed the attorney's ensuring advice).  If Bhakta seeks to present evidence in support
19  of an advice of counsel—through either his testimony or that of an attorney he consulted
20  with—the evidence should first be presented outside of the jury's presence for the Court to
21  make a sufficiency determination.[1]

22

23       [1] *See, e.g., S.E.C. v. Lek Sec. Corp.*, No. 17-cv-1789-DLC, 2019 WL 5703944, at *4
24  (S.D.N.Y. Nov. 5, 2019) (precluding "references to counsel's communications" because,
   among other things, they were "not relevant in the absence of an advice-of-counsel
25  defense" and "any probative value of such references is substantially outweighed" by,
26  among other things, "the risk that such references will sow confusion and mislead the jury
   by suggesting that counsel … fully informed … approved" a transaction); *United States v.*
27  *Ray*, No. 20-cr-110 (LJL), 2022 WL 1004961, *3 (S.D.N.Y. Apr. 1, 2022) ("[N]o
   defendant is entitled to present evidence of the advice of counsel unless the elements of the
28  advice of counsel defense can be established. 'If, after the [pretrial] hearing, the court finds

## IV.    WITNESSES

The United States expects to call the following witnesses in its case-in-chief, although it reserves the right to change the order of these witnesses, substitute witnesses, or add or omit one or more witnesses.  Investor victims, each known to Bhakta and defense counsel, are identified below by their initials:

- Special Agent Todd Townsend, FBI
- Special Agent Chris Christopherson, FBI
- Special Agent Jessica Hefron, FBI
- Special Agent Jeremy Tarwater, FBI
- Benjamin McDonnell, FBI
- Karla Stell, California Employment Development Department
- Allison Kotsay, IRS-CI
- Ed Perkis, FDIC
- Brittani Libring, Hilton Hotels
- Konstantine Drosos, Hilton Hotels
- Dana Lee, Hilton Hotels
- William Perkins, Endeavor Bank
- Scott Parker, Endeavor Bank
- Jill Richardson, California Bank of Commerce
- Giancarlo D'Argento, United Airlines
- Omar Khoury, Wynn Las Vegas
- Ron Randazzo, Pechanga Resort and Casino

---

that the defendant's evidence is insufficient as a matter of law to establish the defense, the court is under no duty to give the requested jury charge or to allow the defendant to present the evidence to the jury.'") (quoting *United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997)); *United States v. Way*, No. 1:14–cr–00101–DAD–BAM–1, 2018 WL 3062159, *8 (E.D. Cal. June 19, 2018) ("[T]he court still does not have sufficiently specific information before it to conclude that defendant Way is entitled to present an advice of counsel defense or to a jury instruction with respect to such a defense.").

- Tony Covington, Pechanga Resort and Casino
- Glenda Hallock, The Cosmopolitan of Las Vegas
- A second representative of The Cosmopolitan of Las Vegas
- Lance Jasper
- P.D.
- S.D.
- A.H.
- J.U.
- P.M.
- A.P.
- S.P.
- T.P.
- A.C.H.
- N.B.
- P.O.

## V.   EXHIBIT LIST

The United States will provide a complete exhibit list prior to trial. The United States reserves the right to add or remove exhibits from this list.  The exhibits in this case may include:

- Email and text messages between Bhakta and victim-investors.
- Documents Bhakta provided to victim-investors, including presentation slides, bank statements, progress reports, and profit and loss statements.
- Promissory notes and other securities between Fusion (executed by Bhakta) and victim-investors.
- Certified bank records for Fusion Hospitality Corporation, Fusion Hospitality Management, LLC and other entities.
- Summary charts of voluminous bank records showing the amount and categorization of money flowing into and out of Fusion's bank accounts.

- ▪ Summary charts showing Bhakta's use of certain victim-investors' money and certain PPP loan money.
- ▪ Certified bank records containing PPP loan applications, supporting documents, and loan forgiveness applications that Bhakta submitted to financial institutions.
- ▪ Bhakta's correspondence with financial institutions in connection with his PPP loan applications.
- ▪ Certified bank records showing Bhakta's receipt and use of PPP loan funds.
- ▪ Certified casino records documenting Bhakta's use of victim-investor funds at various Casinos.
- ▪ Certified financial records for various bank accounts and other financial accounts associated with Bhakta.
- ▪ Certified ISP records related to Bhakta and Fusion.
- ▪ Audio recorded and transcribed SEC deposition testimony of Bhakta.
- ▪ FDIC bank certificates of insurance.

## VI.   JURY INSTRUCTIONS

The United States will submit proposed jury instructions upon filing of its Trial Memorandum.

## VII.   PROPOSED VOIR DIRE

The United States requests that the following *voir dire* questions be addressed to the jury panel.

1.   The Court will instruct you about the law. Will you follow the law as given by the Court and not be swayed by any feelings you may have about what the law is or should be?

2.   Does anyone have any negative views of law enforcement or the FBI that would prevent you from being fair and impartial?

3.   Have you had an unpleasant or negative experience with any law enforcement personnel?  Would that experience cause you to be biased against law enforcement?

/ /

15

4.    Have you ever had any disputes with any agency of the United States Government?  If so, please describe.

5.    Have you or any relatives or close friends ever been accused of, or charged with a crime?

6.    Have you had any training in the law? Do you have close family or friends who have been trained in the law? If so, please explain.

7.    Do you have any moral or religious reservations that might prevent you from standing in judgment of someone else?

8.    Have you or someone you know ever been the victim of fraud?  Would that experience prevent you from being fair and impartial in this case?

9.    The law requires the United States to prove each charge against each defendant beyond a reasonable doubt.  If you are selected, would you want the United States to prove its case by a higher standard of proof, for example beyond any possible doubt?

10.    Do you understand the difference between circumstantial and direct evidence? Do you understand that circumstantial evidence can be used to prove a fact? Will you have trouble giving circumstantial evidence the same weight as direct evidence?

Dated:  October 14, 2024                    Respectfully Submitted,

TARA K. McGRATH
United States Attorney

*/s/ Eric R. Olah*
P. KEVIN MOKHTARI
ERIC R. OLAH
Assistant U.S. Attorneys

16