JOHN D. KIRBY
CA Bar No. 149496
The Law Office of John D. Kirby
401 West A Street, Suite 1150
San Diego, CA 92101
Tel (619)557-0100
jkirby@johnkirbylaw.com

LAURA F. MARRAN
CA Bar. No. 200374
NY Bar. 2310983
1 Columbia Place, 401 West A. Street
Suite 1150
San Diego, CA 92101
Tel (858) 699-0375
lauramarranattorney@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
(HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES GOVERNMENT,<br><br>Plaintiff,<br><br>vs.<br><br>DENNY BHAKTA<br><br>Defendant | Case No: 2:21-cr-03352-JLS-1<br><br>DEFENDANT'S TRIAL MEMORANDUM |

## I.
## STATEMENT OF FACTS

In 2011, Denny Bhakta developed the idea of TurboRes.com (incorporated under Fusion Management LLC), which was designed to help

eliminate third-party commissions that hotels, airlines and other providers have been paying companies like Booking.com, Expedia, and food delivery companies.  These commissions range between 20%-40% of the retail prices of the hotel rooms, airline tickets, and food orders.  As a result of these commissions, prices have gone up, but levels of have gone down.  These problems grew during the 2008 recession when Bhakta was working for Hilton as Director of Revenue Management.

To solve the problem of third-party providers taking such large commissions, Mr. Bhakta began developing intellectual property and other solutions for an entity that would break this third-party cycle.  Mr. Bhakta actually filed a patent on his ideas for TurboRes, which was designed to assist in the following ways:

- B2B (business to business) TurboRes would gather future demand analytics and provides a dashboard to service-providers (hotels, airlines and restaurants) so they can tailor their offerings for high & low demand periods.  Service providers would be able to offer promotions and match customers with those promotion such that these service providers would be able to reduce their dependence on companies (Priceline, etc.) that charge the higher commissions that hotels passed along to customers.

- B2C (business to customer) TurboRes would match the traveler with services and service-providers that best meet their interests.  TurboRes would accomplish this through its algorithms that take customer purchase patterns and match them with service-provider promotions.  In addition, corporations seeking large blocks of rooms could also submit requests for proposals ("RFPs") to TurboRes to match them to hotels and also provide them with options for airline travel.

Simply put, TurboRes would help eliminate commissions and collect a simple listing fee, with uncapped reservations volume to the service-providers. That value would then be passed onto the travelers with better pricing and greater service levels.

This was Mr. Bhakta's solution to what he saw as a devaluation of traveler service based upon the rise of the third-party providers such as Priceline. In order to bring the TurboRes system to fruition, in 2017, Mr. Bhakta began looking for investors who would help fund the development of TurboRes.

Mr. Bhakta first turned to one of his uncles, "Andy" Patel,[1] along with two of Andy Patel's business partners, Mukesh and Vishal Patel (no relation). The Patels were interested in the convention RFPs (requests for proposal) generated by TurboRes, but not the other technological aspects of TurboRes. Mr. Bhakta created therefore created Fusion Hospitality Corporation to segregate the intellectual property for the convention RFP business, where the Patels provided an initial influx of capital to augment Mr. Bhakta's own $6,000,000 investment into the TurboRes.[2] Mr. Bhakta also gave the Patels to

---

[1] Avanindrakumar Patel. Mr. "Andy" Patel is related to Mr. Bhakta, although not his nephew is the strict sense. Messers. Mukesh and Vishal Patel are not related to Mr. Bhakta.
[2] Mr. Bhakta invested money he had saved from his previous salaried jobs at Hilton as well as money he received from his mother's life insurance policy.

*Defendant's Trial Memorandum*
*U.S. v. Bhakta 21-cr-03352-JLS-1*

3

his Wells Fargo Account Access Manager for his Wells Fargo business account.[3]

Mr. Bhakta also branched out to find additional investors for the TurboRes concept. Initially, he sought out lenders who gave him money for a flat interest rate. Later, he offered these individuals, and others, the opportunity to participate as investors in stock in TurboRes, Inc. The "victims" in this case are for the most part the individuals who converted their loans to equity positions. These individuals continue to hold TurboRes stock.

Unfortunately, a falling out with the initial investors (the Patels) led to litigation during the COVID shutdown, which derailed the convention RFP business model and further development of TurboRes. Mr. Bhakta continued developing the intellectual property aspect, but issues related to the litigation took up a great deal of time and effort from the development of TurboRes.

During heights of the COVID epidemic, Mr. Bhakta also took out PPP ("paycheck protection program") loans for several of the entities related to TurboRes. Mr. Bhakta, based upon the advise of his attorneys, took advantage of the special hospitality business provision to borrow multiple loans for each of the related TurboRes companies.

---

[3] Wells Fargo Account XXXXX6589 (allows businesses to add multiple users that can access account activity and download statements).

# II.

# PROPOSED VOIR DIRE QUESTIONS

1. How many of you have applied for a loan through the Paycheck Protection loan Program ("PPP loan program) PPP loan? Or worked for a company that applied for a PPP loan?

2. How many of you have used DocuSign for bank loans, mortgages, real estate or other transactions?

3. When you used DocuSign, did you ever sign without being able to review the entire document?

4. How many of you are you familiar with the term computer "spoofing?"

5. Have any of you be involved in a case of computer "spoofing?"

6. Have you or anyone close to you applied for a PPP loan? If so, what was your experience with the application process?

7. Have you ever been involved in processing or approving PPP loans or other small business loans?

8. What is your understanding of the PPP loan program and its purpose?

9. Have you or anyone close to you experienced financial hardship due to the COVID-19 pandemic?

10. Do you have experience with online booking platforms like Priceline, Kayak, or Booking.com? Have you ever encountered discrepancies between what was advertised and what you received?

11. Have you ever been a victim of identity theft, email hacking, or online fraud? If so, how did it affect you?

12. Are you familiar with terms like "spoofing" or "phishing" in the context of cybersecurity?

13. Have you ever owned or managed a small business? If so, what challenges did you face in securing funding?

14. What are your thoughts on government assistance programs for businesses during times of crisis?

15. Do you have any strong opinions about white-collar crime or financial fraud?

16. Have you or anyone close to you ever been accused of or investigated for financial irregularities?

17. How do you feel about the government's role in regulating business practices?

18. Have you ever served on a jury for a financial crimes case? If so, without disclosing the outcome, how was that experience?

## III.

## PROPOSED JURY INSTRUCTIONS

<u>KNOWLEDGE</u>

The term 'knowingly' is a critical element in this case, and it requires careful consideration. 'Knowingly' means that the defendant was aware of [his] [her] actions, realized what [he] [she] was doing or what was happening around [him] [her], and did not [act] [fail to act] because of ignorance, mistake, or accident.

To find the defendant acted 'knowingly,' you must be convinced beyond a reasonable doubt that:

The defendant had actual knowledge of the specific facts alleged in the indictment. Mere suspicion or belief is not sufficient.

The defendant fully understood the nature and consequences of [his] [her] actions at the time they were taken.

The defendant's actions were deliberate and intentional, not the result of negligence, oversight, or misunderstanding.

Good faith is a complete defense to the charges in this case. If the defendant believed in good faith that [his] [her] actions were lawful, even if that belief was mistaken or unreasonable, it negates the 'knowingly' element.

The government must prove beyond a reasonable doubt that the defendant acted with the specific intent to deceive or cheat, not merely that the defendant's actions had the effect of deceiving or cheating.

Willful blindness or deliberate ignorance is not equivalent to knowledge. The defendant must have actual awareness of the high probability of the existence of the fact in question.

Evidence of the defendant's character, reputation, or prior acts should not be considered in determining whether [he] [she] acted 'knowingly' in this specific instance.

The complexities of securities and banking regulations may create situations where a person can unknowingly violate the law. The defendant's understanding of these regulations at the time of the alleged offense should be taken into account.

Remember, the burden is on the prosecution to prove beyond a reasonable doubt that the defendant acted 'knowingly.' If you have any reasonable doubt about

whether the defendant acted 'knowingly' as defined here, you must find the defendant not guilty."

RECKLESS

The term 'reckless' in this context has a very specific and stringent legal meaning. It is not simply carelessness or negligence, even if severe. For an act to be considered 'reckless,' it must meet all of the following criteria:

1. The conduct in question must be highly unreasonable. This means it goes well beyond mere mistakes or errors in judgment that might occur in the ordinary course of business.

2. The conduct must represent an extreme departure from ordinary care. 'Extreme' in this context means a gross deviation from the standard of care that a reasonable person would exercise in similar circumstances.

3. The conduct must present a danger of misleading investors. This danger must be real and substantial, not merely theoretical or insignificant.

4. This danger must either be:
   a) Actually, known to the defendant at the time of the action, or
   b) So glaringly obvious that the defendant must have been aware of it.

It is crucial to understand and apply the following principles when considering whether the defendant's conduct was reckless:

- The standard for recklessness is not met by showing that the defendant should have known better or could have been more careful. The level of unreasonableness must be extreme.

- Good faith errors, even if significant, do not constitute recklessness. If the defendant genuinely believed their actions were appropriate or non-misleading, this weighs against a finding of recklessness.

- The complexity of securities and banking regulations should be taken into account. What might seem obvious in hindsight may not have been clear at the time, especially in complex financial transactions.

- The defendant's state of mind at the time of the alleged conduct is crucial. Later-acquired knowledge or retrospective analysis should not be used to judge whether conduct was reckless at the time it occurred.

- Industry standards and practices should be considered. Conduct that aligns with accepted practices in the securities and banking industries is less likely to be considered an 'extreme departure' from ordinary care.

- The defendant's experience, role, and access to information should be taken into account when determining whether a danger was 'so obvious' that they must have been aware of it.

- Recklessness requires more than just a mistake in judgment. There must be an element of conscious disregard or indifference to the danger of misleading investors.

Remember, the burden is on the prosecution to prove beyond a reasonable doubt that the defendant's conduct meets all elements of this stringent definition of recklessness. If you have any reasonable doubt about whether the conduct was truly reckless as defined here, you must find the defendant not guilty on this basis.

Moreover, if the prosecution is alleging intentional fraud, recklessness is not sufficient. Intentional fraud requires a higher level of culpability than recklessness."

WILLFULNESS

"The element of 'willfulness' is crucial in this case and requires careful consideration. To act willfully, the defendant must have acted with the intent to defraud. This means more than just voluntary action; it requires a specific state of mind. The government must prove beyond a reasonable doubt that the defendant knew that [his] [her] conduct was unlawful.

To find that the defendant acted willfully, you must be convinced of all of the following:

1. The defendant acted voluntarily and purposefully, not by mistake or accident.

2. The defendant specifically intended to deceive or cheat someone.

3. The defendant knew at the time that [his] [her] actions violated the law.

4. The defendant's purpose was to violate a known legal duty.

It is important to understand and apply the following principles when considering whether the defendant acted willfully:

- Willfulness requires proof of the defendant's subjective intent. It is not enough that a reasonable person would have known the conduct was illegal; the government must prove that this specific defendant actually knew.

- Good faith is a complete defense to willfulness. If the defendant believed in good faith that [his] [her] actions were lawful, even if that belief was mistaken or unreasonable, it negates willfulness.

- Ignorance of the law can be a defense to willfulness in complex regulatory areas like securities and banking law. If the defendant was unaware of the specific legal duty [he] [she] is accused of violating, this weighs against a finding of willfulness.

- Evidence of industry practices and standards is relevant. If the defendant's actions were consistent with common practices in the securities or banking industry, this may indicate a lack of willfulness.

- The complexity of the transactions or regulations involved should be considered. In complicated financial matters, what may seem clear in hindsight may not have been obvious at the time of the alleged offense.

- Willfulness requires more than negligence or recklessness. Even gross negligence or extreme recklessness is not sufficient to prove willfulness.

- The defendant's background, experience, and role should be taken into account when determining whether [he] [she] had knowledge of the unlawfulness of [his] [her] actions.

- Evidence of efforts to conceal actions may suggest consciousness of wrongdoing but is not alone sufficient to prove willfulness. There may be other explanations for such behavior.

- The government must prove willfulness for each specific charge. A general sense that some of the defendant's conduct was improper is not enough to prove willfulness for all charges.

## MATERIALITY

"A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making the decision to [purchase] [sell] securities."

## REASONABLE DOUBT

The government must prove every element of the charged offenses beyond a reasonable doubt. If you have a reasonable doubt about any element, you must find the defendant not guilty.

DATED: October 17, 2024.                    Respectfully Submitted,
                                            /s/John D. Kirby
                                            John D. Kirby,
                                            Attorney for Denny Bhakta

                                            /s/Laura F. Marran
                                            Laura F. Marran
                                            Attorney for Denny Bhakta